**YORK CENTER PARK DISTRICT, Plaintiff–Appellant, Cross–Appellee,**

v.

**Robert R. KRILICH, et al., Defendants–Appellees, Cross–Appellants.**

Nos. 93–4029, 94–1062.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1994.

Decided Nov. 15, 1994.

Karen K. Litscher, William A. Speary, Jr., Much, Shelist, Freed, Denenberg & Ament, Stuart D. Gordon (argued), Chicago, IL, for plaintiff-appellant.

Raymond T. Reott, Ellen L. Partridge (argued), Christine A. Picker, Jenner & Block, Chicago, IL, for defendants-appellees.

Before CUMMINGS, GOODWIN,* and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Lake Yelenich was created in the late 1960s by dredging material from the center of a wetland and piling the muck to create shoreline. Now owned by the York Center Park District, Lake Yelenich is used for fishing and swimming. One neighbor is the Royce Renaissance golf and housing development. The eastern shore of Lake Yelenich, some 442 feet long, is approximately four feet from the border separating the Park District's land from the development's. During 1988, when Royce Renaissance was under construction, Robert Krilich, the principal investor in the corporations that were under-

taking the work, decided to build a fence between the Park District's land and the development—in order, he said, to keep children out of harm's way. After business hours on September 2, 1988, Arrow Landscaping & Excavation, Inc., leveled the land to put in the fence. Cattails and other vegetation on the lake's eastern shore disappeared, replaced by raw dirt. Arrow also dug two trenches, and water gushed from Lake Yelenich into two artificial lakes that had been created on the development. The Park District soon stanched the flow. Arrow pumped the water back into Lake Yelenich, but some fish died in the process.

Trespass and injury were apparent, but quantifying the loss and assessing responsibility remained. The Park District sued six parties, including Krilich, Arrow, and two other corporations (Krilich Builders, Inc., and Riverwoods Development Corp.), under § 301 of the Clean Water Act, 33 U.S.C. § 1311, contending that they discharged dredged or fill material into the navigable waters of the United States without a permit. See 33 U.S.C. § 1344 (authorizing the Army Corps of Engineers to permit actions that otherwise would violate § 301). "Navigable waters" include wetlands. 33 U.S.C. § 1362(7); 33 C.F.R. § 328.3(a)(3); *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 106 S.Ct. 455, 88 L.Ed.2d 419 (1985); but see *Hoffman Homes, Inc. v. Administrator, EPA*, 999 F.2d 256, 260–61 (7th Cir.1993). The Park District contended, and defendants eventually conceded, that the presence of cattails showed that the eastern shore of Lake Yelenich was a wetland. Suit under the Clean Water Act had two benefits for the Park District: It allowed litigation in federal rather than state court, and it authorized an award of attorneys' fees. Invoking the supplemental jurisdiction, the Park District also accused the defendants of trespass and conversion.

■ Pretrial proceedings (including extended settlement discussions at the district judge's insistence) consumed five years. By the time the case was ready for trial, the EPA had completed an investigation and con-

* Hon. Alfred T. Goodwin, of the Ninth Circuit, sitting by designation.

cluded that, although defendants had violated the Clean Water Act by filling wetlands in Royce Renaissance, they had not deposited fill on the Park District's land. The defendants signed a consent decree resolving their differences with the EPA; this coupled with other reverses left Krilich Builders and Riverwoods Development in bankruptcy. Notwithstanding the automatic stay, 11 U.S.C. § 362, the district court pressed ahead with a trial of all defendants. The jury found that the three corporations had committed the torts of trespass and conversion, and it awarded a total of $55,500 in compensatory and $25,000 in punitive damages. The remaining defendants, including Krilich himself, prevailed outright; we shall return to the significance of this verdict.

Because Krilich Builders and Riverwoods Development were undergoing liquidation in bankruptcy at the time of trial, and the bankruptcy judge had not released or modified the automatic stay, the judgment against them must be vacated. The district court did not articulate any reason for believing that an exception to the automatic stay permitted a trial to be conducted. Instead it appeared concerned only that the bankruptcies might impede settlement negotiations. The Park District concedes that the judgment against these two corporations is invalid. We need not decide whether a judgment entered in violation of § 362 is "void" or only "voidable." Compare *Ellis v. Consolidated Diesel Electric Corp.*, 894 F.2d 371, 372 (10th Cir.1990) (void), with *In re Siciliano*, 13 F.3d 748 (3d Cir.1994) (voidable). This is a direct appeal rather than a collateral attack, so the difference between the two formulations does not matter. We postpone ascertainment of the proper characterization, as we did in *Pettibone Corp. v. Easley*, 935 F.2d 120, 122 (7th Cir.1991).

A month after the trial, the bankruptcies came to a close. The Chapter 7 trustee filed no-asset reports (the land itself is held by a real estate trust not involved in bankruptcy), and the cases petered out. Although the Park District knew about the bankruptcies, it did not bother to file claims. Although the corporations had been embroiled in litigation with the Park District for years, they did not bother to list it as a creditor. The upshot may be that the Park District's claim passed through the bankruptcies unaffected, ready to be revived if assets can be located. *Southmark Corp. v. Cagan*, 999 F.2d 216, 221 (7th Cir.1993). We leave to the district court the question whether the Park District's claim must be retried.

■ Arrow did not appeal from the adverse verdict at trial, and the Park District's request for an award of costs against Arrow falls outside our jurisdiction because the Park District did not file a notice of appeal after the district judge rejected its bill of costs. *Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 511 (7th Cir.1989); *Chicago Truck Drivers Pension Fund v. Central Transport, Inc.*, 935 F.2d 114, 119–20 (7th Cir.1991). The other two defendants are not involved in the appeal. From here on, therefore, we discuss only Krilich's personal liability.

■ After entering judgment on the jury's verdicts, the district judge took up the claims under the Clean Water Act, by then effectively reduced to the Park District's demand for attorneys' fees against Krilich, the only solvent defendant. The parties disputed whether Arrow's work had deposited any "fill" on the Park District's land. Borings revealed that there was indeed fill material, but Krilich contended that this had been deposited when Lake Yelenich was dug out and had simply been rearranged by the grading operation in 1988. Krilich also relied on the Corps of Engineers' definitions of dredged and fill material, 33 C.F.R. § 323.2 (1988):

(d) The term "discharge of dredged material" means any addition of dredged material into the waters of the United States.... The term does not include de minimis, incidental soil movement occurring during normal dredging operations.

(e) The term "fill material" means any material used for the primary purpose of replacing an aquatic area with dry land or of changing the bottom elevation of a waterbody....

According to Krilich, the "primary purpose" of the bulldozing and grading was to install a

fence rather than to "replac[e] an aquatic area with dry land or [change] the bottom elevation of a waterbody." See *Save Our Wetlands, Inc. v. Sands*, 711 F.2d 634, 647 (5th Cir.1983).

The district court did not resolve the disputes about events and purposes. Nor did the court attempt to apply new regulations, issued in 1993, governing mechanized landclearing in wetlands. See *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208–09, 109 S.Ct. 468, 471–72, 102 L.Ed.2d 493 (1988) (regulatory changes may not be applied retroactively). Instead the court wrote that "any material which may have been moved onto York's property was de minimis." By using this term, the court apparently did not have in mind 33 C.F.R. § 323.2(d), for Arrow was not engaged in "normal dredging operations." Instead the court wrote that the acreage affected was beneath federal concern in light of the nationwide permits collected in 33 C.F.R. § 330.5(a). One of these standing permits authorizes filling less than 10 acres after obtaining any consent required by state law and giving appropriate notice to the Corps. 33 C.F.R. § 330.5(a)(26). If less than one acre is involved, notice is unnecessary. The district court observed that Arrow's operations affected approximately one tenth of an acre on the Park District's side of the boundary. After concluding that the considerably larger tract on the development's side of the fence could be disregarded, the district court announced that the activity had been authorized in advance by the one-acre nationwide permit.

What the district court did not explain is how Krilich could use a nationwide permit to justify filling someone else's land. "Nationwide permits do not authorize any injury to the property or rights of others." 33 C.F.R. § 330.5(c)(4). The court's decision is accordingly untenable, and we need not decide whether the court also erred in using the property line to produce a tract small enough to come within the one-acre authorization.

■ Because the district court bypassed the disputes about the source of the fill on the eastern shore of the lake, and about the purpose of the grading operations, a remand ordinarily would follow. We believe, however, that the jury's verdict makes further proceedings unnecessary. When a jury resolves some claims in a case and a judge handles the rest, the judge must respect the jury's factual decisions on issues common to the claims, save to the extent the seventh amendment permits their reexamination. *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Williamson v. Handy Button Machine Co.*, 817 F.2d 1290, 1293–94 (7th Cir.1987); *Hunter v. Allis–Chalmers Corp.*, 797 F.2d 1417, 1421 (7th Cir.1986). The jury found that trespass and conversion occurred but absolved Krilich of liability. The only plausible basis for this outcome is a belief that Krilich, who was out of town on September 2, 1988, did not authorize or anticipate the destructive manner in which the land would be graded. (The grading operation is the only element of the work that might have deposited "fill material" on the Park District's land.) Corporate officers are not automatically liable for their firms' legal transgressions; the Park District concedes that Krilich is not responsible under the Clean Water Act unless he authorized Arrow's activities. The jury's verdict conclusively resolves against the Park District the question whether Krilich authorized the offending activities. The Park District's reply—that the jury might have exonerated Krilich after finding that he did not "intend" the trespass, without passing on whether he authorized the activities—depends on a misreading of the jury instructions. The jury was informed that liability for compensatory damages did not require intent, which was important only to punitive damages. Because Krilich prevailed outright, the jury necessarily found that he had not authorized any destructive intrusion on the Park District's land.

■ One more issue remains. Krilich has prevailed on all claims against him. Prevailing parties recover costs "as of course", Fed.R.Civ.P. 54(d)(1), unless the district court directs otherwise. Here the court so directed, stating that it was "exercising ... discretion" but not giving reasons. It observed, accurately, that the Park District had prevailed only in part, but it overlooked the

fact that Krilich had won across the board. Legal rules committing decisions to judicial discretion suppose that the court will have, and give, sound reasons for proceeding one way rather than the other. See *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1334 (7th Cir.1992). "We must not invite the exercise of judicial impressionism. Discretion there may be, but 'methodized by analogy, disciplined by system.' Cardozo, The Nature of the Judicial Process, 139, 141 (1921). Discretion without a criterion for its exercise is authorization of arbitrariness." *Brown v. Allen*, 344 U.S. 443, 496, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Frankfurter, J.). The "criterion" implied by the district court's handling of this case is its disgust that the parties sought a judicial resolution of their dispute. The judge called the case "a monstrous grudge match" that "could, and should, have been resolved as a fence dispute". In the years before trial the judge implored the lawyers "to make this thing go away." When denying the Park District's motion to reconsider his decision under the Clean Water Act, an obviously exasperated judge began: "Well, Counsels, I'll tell you something. I had hoped that Krilich v. the York Park District [sic] was no longer a part of my life, but it continues to be. And since people continue to want to ask me questions about this thing, I am going to this morning give you a final answer...." More in the same vein followed.

A judge ought not feel put upon when litigants seek adjudication. Resolving disputes is the court's function. There was more substance here than in the bulk of cases filed in federal court. It may be that the parties could have resolved matters without judicial assistance, but, when settlement efforts fail, the court must proceed with the same care that it lavishes on the conflicts that it deems "worthy." If someone has unnecessarily multiplied or extended the proceedings, the judge may invoke 28 U.S.C. § 1927. Treating a lawsuit like a party crasher may increase rather than decrease the costs of its resolution. By disregarding the automatic stay, the district judge has set the stage for a second trial on the claims against Krilich Builders and Riverwoods Development. By sweeping aside the factual disputes about the deposition of fill and the purpose with which defendants acted, the district court laid the groundwork for a remand. So too with the peremptory treatment of the bill of costs. On this subject, however, we believe that the district court abused its discretion and that Krilich is entitled to costs as a matter of law. He prevailed on every claim. It is hard to chastise a victorious *defendant* for imposing on the court's time; unwillingness to satisfy a plaintiff's demands in settlement, when under the law one owes nothing, is not blameworthy.

The judgment against Krilich Builders and Riverwoods Development is vacated, and the case is remanded for further proceedings consistent with this opinion. The judgment in favor of Krilich is affirmed. The Park District's appeal is dismissed for want of jurisdiction to the extent it seeks costs from Arrow. The order denying Krilich's petition for costs is reversed, and the case is remanded with instructions to determine and award the costs properly taxed under 28 U.S.C. §§ 1920–24. Krilich, Krilich Builders, and Riverwoods Development recover their costs in this court from the Park District on both the appeal and the cross-appeal.