In the
United States Court of Appeals
For the Seventh Circuit

No. 00-3128

Vervia D. Logan,

Plaintiff-Appellant,

v.

Kautex Textron North America,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:99 CV 269--William C. Lee, Chief Judge.

Argued February 23, 2001--Decided July 30, 2001

   Before Flaum, Chief Judge, and Ripple and
Williams, Circuit Judges.

   Williams, Circuit Judge.  Vervia Logan
filed this suit against Kautex Textron
North America claiming that she was
discharged because of her race and in
retaliation for complaining of co-worker
harassment, and subject to a racially
hostile work environment in violation of
Title VII, 42 U.S.C. sec. 2000e et seq.
and 42 U.S.C. sec. 1981./1 The district
court granted summary judgment in favor
of Kautex on all three claims, and Logan
appeals. Because Logan has failed to
create a genuine issue of material fact
as to whether she was discharged because
of her race or in retaliation for
complaining of statements made by a co-
worker, we affirm.


I.  FACTS

   Drawing all inferences in the light most
favorable to Logan, which is our standard
of review on a grant of summary judgment,
see Essex v. United Parcel Serv., Inc.,
111 F.3d 1304, 1308 (7th Cir. 1997), the
facts are as follows. Logan, an African
American female, was employed by Kautex
for a little over one month. During this
probationary period, a Caucasian male co-
worker made two racial comments and one
that threatened Logan's job security.

Once, while on the production line at work, Jeff Finley stated that interracial relationships were disgusting. Ellie Justice, the Team Leader, told him to shut up and he did so. On another occasion, while driving through a rural area with Logan, Finley stated that blacks did not want to be caught in that area of town because they could get lynched. The next morning, Finley told Logan that if she wanted to keep her job, she better get along with him. The parties dispute whether Logan complained to management about Finley's statements.

Pursuant to company policy, Logan's six co-workers, including Finley, completed evaluations to help Kautex determine if Logan should be hired as a "permanent" employee. Four of the six recommended that the company not hire Logan on the grounds that Logan either had a bad attitude or was not a team player. Of the two co-workers who recommended that Kautex hire Logan, one stated that she did not work with Logan regularly and the other recommended hiring Logan if Logan could control her attitude. Based on these evaluations, Kautex decided not to extend Logan an offer for full-time employment and discharged her. Logan's criminal probation officer asserts that she called Kautex after Logan was discharged and was told by the Human Resources Manager that Logan was terminated for absenteeism.

II. ANALYSIS

Logan, conceding that she agreed below that she did not have direct evidence of discriminatory animus, argues on appeal that the district court erred in requiring her to proceed under the indirect method of proof set forth in Mc Donnell Douglas Corp. v. Green, 411 U.S. 792 (1973)./2 We will analyze her claims under both the direct and indirect methods because the pertinent question is not whether a plaintiff has direct (including circumstantial) or indirect proof of discrimination, but whether Logan has presented sufficient evidence that Kautex's decision to discharge her was motivated by an impermissible purpose. See Sattar v. Motorola, Inc., 138 F.3d 1164, 1169 (7th Cir. 1998).

A. Discharge-Direct Method

Under the direct method, because Logan has conceded that she does not have direct evidence of discrimination (an acknowledgment of discriminatory intent by Kautex), Logan must offer circumstantial evidence sufficient to provide a basis for drawing an inference of intentional discrimination. See Troupe v. May Dep't Stores Co., 20 F.3d 734, 736 (7th Cir. 1994). That is, we must be able to infer from the evidence that Logan was discharged because of her race or in retaliation for complaining of racial harassment.

The three incidents that Logan points to are not enough to satisfy her burden. The first comment by Finley demeaning interracial dating was not even directed at Logan, but was made during a conversation among all the individuals on the assembly line. In fact, when Finley was told to shut up, he did so. Statements "made in the context of random office banter . . . do not constitute evidence of intent to fire for an impermissible reason." Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1089 (7th Cir. 2000). The second comment by Finley, that blacks could get lynched in a particular part of town, although we have no doubt it made Logan uncomfortable, was in no way causally related to the decisionmaking process, and therefore, does not support a finding that she was discharged because of her race. Id. The third comment that, Logan better get along with him if she wanted to keep her job, has no racial overtones but is pertinent because Finley actually participated in the vote as to whether to retain Logan. If Finley was the sole decisionmaker, Kautex would have a problem. However, five other people voted and all of them either mentioned Logan's attitude or problem with being a team player, and three of those five specifically recommended that Kautex not hire her. Logan has failed to present any evidence that Finley's vote counted more than the others, that he controlled the actions of the other co-workers, or that the other co-workers even knew that Logan had complained to management about Finley's comments. Logan argues that Justice's vote (another co-worker) is also suspect because Logan complained to Justice. But, again, there is no proof that Justice infected the process, and

most importantly, Justice actually recommended that Kautex hire Logan. Because Logan has failed to create an inference that she was discharged because of her race or in retaliation for complaining, Logan has not satisfied her burden under the direct method of proof.

### B. Discharge-Indirect Method

#### 1. Race discrimination

In order to establish a prima facie case of intentional discrimination under the indirect method, Logan must demonstrate that: 1) she was within a protected class; 2) she was performing to the employer's legitimate expectations; 3) she suffered an adverse employment action (discharge); and 4) Kautex treated similarly situated employees of a different race more favorably. See Oates v. Discovery Zone, 116 F.3d 1161, 1171 (7th Cir. 1997). We agree with the district court that Logan failed to establish a triable issue as to the fourth element--whether Kautex treated similarly situated persons not in the protected class more favorably. (Without deciding, we also cast doubt on whether Logan could satisfy the second element-- that she was meeting her employer's legitimate expectations--because being a team player was one of Kautex's expectations).

The undisputed evidence shows that during the relevant time period Kautex discharged eight white probationary employees who were "voted out" by their co-workers. Three of the eight were hired immediately prior to or after Logan's termination, and were voted out within a month of their hire dates, just like Logan. Because we have found that Logan cannot make out a prima facie case, we need not proceed further under the McDonnell Douglas burden-shifting method. See Hoffmann v. Primedia Special Interest Publ'ns, 217 F.3d 522, 525 (7th Cir. 2000).

#### 2. Retaliation

To establish a prima facie case of retaliation, Logan must prove that: 1) she engaged in statutorily protected expression, 2) she suffered an adverse employment decision, and 3) there is a

causal link between the two. See Oates, 116 F.3d at 1172. In some instances, the fact that a plaintiff was fired two weeks after her complaints to management can be a short enough time to establish the necessary causal link. See McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796-97 (7th Cir. 1997) (collecting cases). However, Logan's counsel conceded at oral argument that we cannot make much of the timing because there was no evidence that Kautex ever ordered a vote at any time other than within 30 days of an employee's start date. If that is so, the fact that the vote was taken shortly after Logan's complaints does not raise a presumption that it was in response to her complaints. Nevertheless, because the summary judgment standard requires us to draw all inferences in favor of Logan, and there was such a short time, we will assume without finding that Logan has established a prima facie case. However, Logan's claim ultimately fails because we also find that Logan has failed to establish that Kautex's proffered nondiscriminatory reason was pretextual.

Pretext under the McDonnell Douglas burden-shifting method of proof does not mean a mistake, but "a phony reason for some action." Russell v. Acme-Evans Co., 51 F.3d 64, 68 (7th Cir. 1995). Logan must show that Kautex's reason for discharging her was unworthy of credence. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). That is, Logan must provide "'evidence tending to prove that the employer's proffered reasons are factually baseless, were not the actual motivation for the discharge in question, or were insufficient to motivate the discharge.'" Gordon v. United Airlines, Inc., 246 F.3d 878, 888-89 (7th Cir. 2001) (quoting Adreani v. First Colonial Bankshares Corp., 154 F.3d 389, 395 (7th Cir. 1998)). To satisfy this burden, Logan asserts that Kautex gave multiple reasons for her discharge (bad attitude, sabotaging tanks, performance, and absenteeism), and this inconsistency is enough for a jury to infer that the proffered reason was not the actual reason for her discharge.

Our review of the record convinces us that the reasons asserted by Kautex (other than absenteeism) were not as different as Logan claims. For example, Justice's statement that, in her opinion,

Logan was voted out because she sabotaged tanks was an example of Justice's belief that Logan had a bad attitude. (See Justice Deposition, pp. 6-7.) Additionally, the "performance" box checked on the discharge form was one of a few generic boxes Kautex used when it discharged an employee. Reading further down the form in the space where a specific description for the reason behind the discharge is provided, Kautex wrote that Logan was voted out by her team. Attached to the separation form were the evaluations of the employees identifying each of their reasons why Logan should not be retained. As for absenteeism, Kautex disputes that it told Logan's criminal probation officer that Logan was fired for that reason, but we must accept this assertion as true. Nevertheless, we conclude that no reasonable jury could find that Logan was terminated for any reason other than that she was voted out by her team.

We recognize that labeling an employee as having an "attitude" can be a camouflage for race discrimination in certain cases, see Perfetti v. First Nat'l Bank of Chicago, 950 F.2d 449, 457 (7th Cir. 1991), but Logan has failed to point to any objective evidence that this subjective evaluation was a mask for discrimination. See Sattar, 138 F.3d at 1170-71. For example, there is nothing to show that similarly situated employees were treated better, that the other co-workers harbored animus toward Logan, or that Finley somehow controlled the actions of the other co-workers who voted Logan out. See id. Accordingly, the district court properly found that Logan failed, under the indirect method of proof, to demonstrate a triable issue of fact on her retaliation claim.

C. Hostile Work Environment

In order to be actionable under Title VII, a plaintiff's work environment must be both objectively and subjectively offensive. Whether a work environment is hostile depends on "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "The workplace that is actionable is the one

that is 'hellish.'" Perry v. Harris Chernin, Inc., 126 F.3d 1010, 1013 (7th Cir. 1997) (citing Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995)). Furthermore, in co-worker harassment cases, the plaintiff must show that the employer was negligent in failing to correct the harassment. Id.

Even if we were to accept that Logan subjectively believed the workplace was offensive and that Kautex had knowledge of the conduct, we agree with the district court that Finley's three verbal utterances (one made in the context of random office banter and two not causally related to the decisionmaking process) do not rise to the level of an objectively hostile work environment. Accordingly, summary judgment in favor of Kautex was proper on Logan's hostile work environment claim.

## III. CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

## FOOTNOTES

/1 Both Title VII and sec. 1981 discrimination claims are analyzed in the same manner. Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

/2 Logan also argues that the framework set forth in McDonnell Douglas should not be rigidly applied to her case because her claim is one of "sex plus race." See, e.g., Jefferies v. Harris County Cmty. Action Ass'n, 615 F.2d 1025, 1032-33 (5th Cir. 1980) (recognizing that African American women may be able to state a claim even in the absence of discrimination against African American men or white women). Without deciding whether we recognize a "sex-plus" theory, we refuse to analyze Logan's claim under such a theory because in her complaint she pleaded only discrimination on account of her race. Therefore, we consider only the racial comments made by Jeff Finley.