**Judith Pettijohn McCONNELL, Plaintiff–Appellant,**

v.

**RITZ–CARLTON WATERTOWER,\* Defendant–Appellee.**

No. 01–4313.

United States Court of Appeals, Seventh Circuit.

Submitted June 5, 2002.\*\*

Decided June 25, 2002.

Rehearing and Rehearing En Banc Denied Aug. 6, 2002.

Before EASTERBROOK, DIANE P. WOOD, WILLIAMS, Circuit Judges.

## ORDER

Judith McConnell, who is over 40 years old, appeals from the district court's grant of summary judgment in favor of her former employer, the Ritz–Carlton Watertower, on her claim that Ritz–Carlton fired her in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34. Because the district court correctly concluded that McConnell failed to establish a genuine issue whether she was discharged

---

\* Although it is unclear whether "Ritz–Carlton Watertower" is the name of the defendant or simply an assumed name under which the defendant does business, the defendant identifies itself as "Ritz–Carlton Watertower" in both its answer to the complaint and in its Rule 26.1 disclosure statement, *see* Fed.

R.App. P. 26.1; Cir. R. 26.1, so we will also identify it by that name.

\*\* After an examination of the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* Fed. R.App. P. 34(a)(2).

because of her age, rather than her poor job performance, we affirm.

McConnell worked as the membership director of the Carlton Club, a private club in the hotel, from October 1999 to April 2000. As membership director McConnell completed club membership reports, solved membership problems, entertained members, originated ideas for membership events, and attended those events. McConnell also solicited new club members through direct mailings. Although McConnell supervised two employees (the club's daytime and nighttime receptionists), who assisted with the club's mailings and newsletters, McConnell had ultimate responsibility for ensuring proper preparation of the mailings. As membership director McConnell reported directly to the club's managing director, Pedro Dos Santos.

In January 2000 Dos Santos prepared a 90-day written review of McConnell's performance. In his review Dos Santos told McConnell that her progress and familiarization with her department had been slow. He also said that she needed to improve her concentration, time management, involvement with members, research of the club, and "superior attitude" toward younger managers. Dos Santos concluded the review, however, by telling McConnell that she should take his comments positively and that he had total confidence in her ability to succeed at the job. In January Dos Santos also sent an email to McConnell (on which the daytime and nighttime receptionists were copied), noting that the club had fallen behind its mailing goals in 1999 and that McConnell needed to concentrate on the problem to ensure that mailings did not lag in 2000.

In March Dos Santos sent another email expressing concern about the club's membership mailings. Although the club's marketing plan called for 2,200 total mailings per month, the club sent only 632 mailings in January and 1,329 mailings in February. Dos Santos suspected that the staff did not receive the help or support they needed and that McConnell had failed to concentrate on the problem. McConnell reassured Dos Santos that the mailings would be caught up by the end of the month, and with the help of the club's catering manager and its catering coordinator, McConnell sent 4,400 mailings in March. According to an email sent by Dos Santos, which congratulated everyone who worked on the March mailings, these efforts produced seventeen new memberships.

In April McConnell went on vacation for the Easter weekend. When she returned, Dos Santos informed her that she had been fired. In a memorandum to hotel general manager Thomas Kelly and human resources director Lisa Jensen—both of whom approved Dos Santos's original recommendation to hire McConnell and his recommendation to fire her—Dos Santos provided several reasons for the discharge. Dos Santos said that despite his counseling McConnell did not progress as expected and misunderstood the role of a manager and the company's philosophy toward employees. According to Dos Santos, McConnell created an unhealthy office environment, and her "disgraceful way and style of communication" caused poor teamwork. Dos Santos also said that McConnell inappropriately used email in sensitive situations, isolated herself from members, created a "negative perception" with the hotel's department heads and planning committee, and always thought she was right and others were wrong. In an affidavit submitted to the district court, Dos Santos further attested that he based his recommendation partly on McConnell's failure to meet mailing goals and that he considered McConnell's reliance on help from the club's catering manager and its catering coordinator as evidence of McConnell's problems with the mailings.

After receiving a right to sue letter from the EEOC, McConnell commenced this action, claiming that Ritz–Carlton discharged her because of her age and alleged disability (a gallbladder problem that required surgery). The district court dismissed the disability discrimination claim under Federal Rule of Civil Procedure 12(b)(6), and that determination is not contested on appeal. We review the district court's grant of summary judgment on the age discrimination claim de novo. McConnell does not argue that she presented direct evidence of age discrimination. She instead relied on the indirect method of proof established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The district court determined that McConnell established a prima facie case under *McDonnell Douglas,* but we need not address this conclusion explicitly. As is often the case, the inquiry under *McDonnell Douglas* focuses on one element of the prima facie case—whether McConnell was fulfilling Ritz–Carlton's legitimate performance expectations—and on whether Ritz–Carlton's contention that McConnell did not perform as expected is a pretext. We therefore analyze the issue of McConnell's performance only once. *See, e.g., Simmons v. Chicago Bd. of Educ.,* 289 F.3d 488, 492 (7th Cir.2002).

Ritz–Carlton identifies a number of examples of deficient performance. According to Dos Santos, McConnell did not progress as expected, misunderstood the role of a manager and the company's philosophy toward employees, created an unhealthy office environment, caused poor teamwork, used email inappropriately, isolated herself from members, created a negative perception with hotel management, always thought she was right and others were wrong, and failed to meet mailing goals. McConnell disagrees with these criticisms, but her own subjective assessment of her performance is not evidence that she met performance expectations, *see Denisi v. Dominick's Finer Foods, Inc.,* 99 F.3d 860, 865–66 (7th Cir. 1996), or that Dos Santos lied in his evaluation, *see Fortier v. Ameritech Mobile Communications, Inc.,* 161 F.3d 1106, 1114 (7th Cir.1998).

And McConnell has not supplied any objective evidence that might call into doubt Dos Santos's reasons for recommending her termination. *See Logan v. Kautex Textron N. Am.,* 259 F.3d 635, 640–41 (7th Cir.2001); *Sattar v. Motorola, Inc.,* 138 F.3d 1164, 1170 (7th Cir.1998). She comes closest by asserting that Dos Santos could not have legitimately considered the shortfall in the club's mailings since she had the club on track to meet its mailing goals when she was fired. Dos Santos, though, said that he based his recommendation to terminate McConnell not on a current mailing deficit but instead on her failure to meet mailing goals for "five of her six months of employment." McConnell does not deny that the club's mailings lagged during that period, and in any event, McConnell needed to provide evidence that all of the shortcomings identified by Dos Santos were phony, *see Russell v. Acme–Evans Co.,* 51 F.3d 64, 69 (7th Cir.1995), which she did not do here. McConnell adds that Ritz–Carlton did not follow its own personnel policies when it fired her, that Dos Santos favored younger employees (such as the nighttime receptionist), and that Dos Santos remarked, when firing her, that he originally recommended hiring her because of her age. But Ritz–Carlton's purported violation of its personnel guidelines raises no inference of discrimination absent evidence that the hotel discharged McConnell for a reason other than poor performance. *See O'Connor v. DePaul Univ.,* 123 F.3d 665, 670 (7th Cir.1997). Similarly, Dos Santos's perceived favoritism is unavailing because it is assumed, as part of McCon-

nell's prima facie case, that she was treated worse than substantially younger employees. *See Rummery v. Ill. Bell Tel. Co.*, 250 F.3d 553, 557 (7th Cir.2001). Finally, Dos Santos's alleged remark that he originally hired McConnell because of her age adds nothing since the comment on its face suggests that Dos Santos considered McConnell's age to be a positive quality. McConnell labels the comment discriminatory because she says that Dos Santos made it in a "transparent attempt to evade litigation," but her speculation is unsupported by any evidence that Dos Santos suspected McConnell might file a lawsuit at the time he recommended firing her.

McConnell advances several other arguments in her appellate brief that do not require extended discussion. She first contends that the district court should have considered several documents (such as a letter from her cousin and an unsworn statement, typed in the form of a deposition, from her successor) submitted in response to Ritz–Carlton's motion for summary judgment. But these materials were not notarized or subscribed under penalty of perjury, *see DeBruyne v. Equitable Life Assur. Soc.*, 920 F.2d 457, 471 (7th Cir. 1990), even though Ritz–Carlton gave McConnell notice that her response needed to include verified materials and comply with the Federal Rules of Civil Procedure and the court's local rules, *see Timms v. Frank*, 953 F.2d 281, 285 (7th Cir.1992). So the district court acted within its discretion in ignoring McConnell's unverified submissions. In a related argument, McConnell contends that the district court improperly adopted significant portions of Ritz–Carlton's statement of undisputed facts. Yet as the district court explained, the bulk of McConnell's responses to Ritz–Carlton's statement contain argument or lack citations to the record and thus fail to comply with Northern District of Illinois Local Rule 56.1. *See Greer v. Bd. of*

*Educ.*, 267 F.3d 723, 727 (7th Cir.2001). With respect to those facts that McConnell did not properly contest, the district court also acted within its discretion in adopting Ritz–Carlton's version of the facts. Finally, McConnell argues that the district court improperly ordered her to pay \$1625.02 in costs to Ritz–Carlton. *See* Fed.R.Civ.P. 54(d). But McConnell failed to file a timely notice of appeal directed at the order awarding costs, which was entered after she filed her notice of appeal from the grant of summary judgment. We therefore lack jurisdiction to consider the propriety of the award. *See Wielgos v. Commonwealth Edison Co.*, 892 F.2d 509, 511–12 (7th Cir.1989); *see also York Ctr. Park Dist. v. Krilich*, 40 F.3d 205, 207 (7th Cir.1994). The judgment of the district court is

AFFIRMED.