Bobbie J. MONCRIEF, Plaintiff–
Appellant,

v.

Paul H. O'NEILL, Secretary of the
Treasury, Defendant–Appellee.

No. 02–2562.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 17, 2002.

Decided Jan. 22, 2003.

Before BAUER, CUDAHY, and
COFFEY, Circuit Judges.

ORDER

Bobbie Moncrief, an African–American woman over age 40, applied for a promotion to a vacant position as GS–12 Revenue Officer for the Internal Revenue Service ("IRS"). Based upon the applicants' performance evaluations and experience, the IRS instead selected Scott Tran, an Asian male under age 40. Moncrief sued under Title VII 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621, *et seq.*, claiming that she was denied the promotion based upon her race, sex, and age. The district court concluded that Moncrief had established a *prima facie* case of race discrimination, but that she had not rebutted the IRS' argument that the decision was based upon the applicants' performance evaluations. The district court also rejected Moncrief's sex and age discrimination claims, which she does not appeal. We affirm.

Background

Moncrief is a 58 year-old African–American woman who began working for the IRS in 1980 and became a revenue officer in 1982. She was promoted in 1987 to the GS–11 level, and sought a promotion to GS–12 when a vacancy was announced in the Offer In Compromise Group in Downers Grove, Illinois. As part of her applica-

tion portfolio, Moncrief submitted several performance evaluations, the most recent being a 1998 review by her supervisor Christopher Love. That evaluation rated Moncrief's performance on an ascending scale of 1 to 5, and she earned four 5s and one 4 in the area of "Time and Workload Management." In his deposition Love testified that he scores his employees "what they deserve from the work that I see them doing, no matter what it is" although he did not recall any particular basis for the specific ratings. After his deposition Love submitted an affidavit stating that he did not believe Moncrief's work merited an evaluation with a score of all 5s, and that in any event his supervisor would not approve such a review. Moncrief did not submit any evidence that the rating of 4 in the category of "Time and Workload Management" was not supported by fact, and none of her previous performance evaluations had resulted in all perfect scores.

Moncrief claims that Love gave her an imperfect evaluation not because of faulty performance, but because he is racist. Rochelle Christian, an IRS employee, testified that Love made several prejudicial statements to her while she was under his supervision between 1996 and 1998. Love cannot recall but does not dispute stating at some point during those years that in New York City, "blacks and minorities were looking for a 'free pass.'" Based upon these comments, however, Christian concluded that Love was simply "silly," and not a racist. At some time around 1997 (although Moncrief's testimony is unclear as to the specific date), Love admittedly stated to Moncrief "that the blacks in the film ['The Tuskegee Airmen'] were trying to do a good job and they weren't lazy." Love also told her at that time that Moncrief that "you have lazy people in all races" and that his racial statements did not apply to her.

Moncrief and 29 other GS–11 employees applied for the vacant GS–12 position at issue. Roger Conradt, the "ranking official," gave the candidates a numerical score under a set of criteria prescribed by IRS policies that took into account the latest performance evaluations as well as the applicants' knowledge, skills and abilities. According to these computations, Moncrief's name appeared on a "Best Qualified List" of candidates, behind David Preston and Scott Tran, who received a score of 53, and tied with Steven Lilja and Frank Navarette, who scored 51. Because the applicants with tied scores are ranked alphabetically, Moncrief appeared fourth on the list. Jeff Tomaw, the "selecting employee," eventually promoted Tran because Preston had already accepted another GS–12 position.

Tran had begun working for the IRS in 1991 as a tax examiner. At the time that he applied for the vacant GS–12 position, he had five years of experience as a revenue officer. He joined the Offer In Compromise Group, and two months later the GS–12 position opened in that group. In 1998 and 1999, Tran received two perfect evaluations from two different supervisors. One of these evaluations was a review of his performance at the GS–9 level that had been "revalidated" by his current supervisors. Although Tran had fewer years of experience than Moncrief, he was equally eligible for the GS–12 promotion, according to IRS policies.

In February 2001, Moncrief sued the IRS, claiming that she was denied the promotion because of her race, sex, and age, in violation of Title VII and the ADEA. The IRS moved for summary judgment, which the district court granted in an oral ruling. The court found that the IRS selection process was fair and valid, and that Moncrief's evidence of Love's racial prejudice was insufficient to meet her

burden of showing that the hiring process was pretext for discrimination. Moncrief abandoned her sex and age discrimination claims, and now appeals only the district court's grant of summary judgment on her race claim.

## ANALYSIS

We review a grant of summary judgment *de novo,* based upon the facts and arguments presented to the district court. Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In reviewing summary judgment, we draw all reasonable inferences from the evidence in the light most favorable to the non-moving party. *Furnish v. SVI Sys., Inc.,* 270 F.3d 445, 448 (7th Cir.2001).

Moncrief does not contend that there is any direct evidence of discrimination, so she must proceed under the indirect burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Both parties agreed that Moncrief established a *prima facie* case, and thus the burden shifted to the IRS to provide evidence of a legitimate, non-discriminatory reason for choosing not to promote her. *Simmons v. Chi. Bd. of Educ.,* 289 F.3d 488, 492 (7th Cir.2002). If the IRS succeeded in providing such evidence, the burden then shifted back to Moncrief to prove that the IRS' articulated reason was pretextual. *Id.*

On appeal, Moncrief contests the district court's conclusion that she failed to submit evidence to show that the IRS' evaluation and selection process were used as a pretext to deny her the promotion based upon her race. Moncrief can rebut the IRS' stated reasons only by showing that they had no basis in fact, *Johnson v. City of Fort Wayne,* 91 F.3d 922, 931 (7th Cir.

1996), or that the IRS did not "honestly believe" in the nondiscriminatory reasons it offered, *Johnson v. Nordstrom, Inc.,* 260 F.3d 727, 733 (7th Cir.2001). An employer is required only to make a reasonably informed and considered decision to show that it honestly believed the reasons for the adverse employment action. *Braithwaite v. Timken Co.,* 258 F.3d 488, 494 (7th Cir.2001).

First, Moncrief contests the district court's holding that she failed to satisfy her burden of showing that the IRS' legitimate explanation for its hiring decision— the ranking of performance evaluations— was pretext for discrimination. Moncrief initially states that she has established pretext by showing that Love's evaluation did not accurately reflect her true performance. *See Johnson,* 91 F.3d at 931. Moncrief faces an uphill battle, for we question an employer's business decisions or evaluations only when they appear to be dishonestly made, *see Millbrook v. IBP, Inc.,* 280 F.3d 1169, 1184 (7th Cir.2002), and on summary judgment, "a complete failure of proof concerning an essential element of the [nonmovant's] case necessarily renders all other facts immaterial." *Lewis v. Holsum of Ft. Wayne, Inc.,* 278 F.3d 706, 709 (7th Cir.2002) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Moncrief points to Love's inability at his deposition to remember why he gave her any particular score as evidence that his imperfect score for her was not based on merit. But under the *McDonnell Douglas* test, it is Moncrief's burden to provide evidence rebutting the IRS's explanation for its hiring decision. *See Clay v. Holy Cross Hosp.,* 253 F.3d 1000, 1009 (7th Cir. 2001). This she fails to do. Although she believes that she was entitled to a perfect performance evaluation, Moncrief has offered no evidence to indicate that she did

not deserve a score of 4 for "Time and Workload Management." Throughout Moncrief's twenty years of service with the IRS, she never received a perfect performance evaluation, and she has not supplied any evidence to indicate that her work had improved so as to merit such scores. The closest Moncrief comes to fulfilling her burden is by pointing to portions of her performance evaluation and Love's testimony that describe her as a "very good employee." The IRS, however, admits that Love was a good employee, only not a "perfect" one entitled to scores of 5 on her performance evaluation.

Instead of pointing to evidence that rebuts the IRS' explanation, Moncrief attempts to shift her burden by asking "why *didn't* she get the 5?" In his deposition, Love stated that he rates employees "what they deserve from the work that I see them doing, no matter what it is." In his affidavit Love states that "I never gave Bobbie Moncrief an evaluation with a score of all 5's because I did not believe her work warranted such an evaluation." Moncrief is correct that Love cannot contradict his deposition testimony through a subsequent affidavit, *see Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001), but here Love's affidavit is consistent with his prior testimony, and merely supplements it. Therefore, the district court correctly considered Love's affidavit in reaching its decision to grant summary judgment for the IRS.

Moncrief's second argument on appeal is that the district court erred in holding that evidence of Love's racially prejudicial statements is insufficient to rebut the IRS' claim that its decision not to promote her resulted from legitimate hiring and selection procedures. She asserts that a reasonable jury could infer that because the IRS provided no other explanation for its "failure" to give her ratings of 5 in all categories, her imperfect performance evaluation must have been due to race. Because Moncrief has offered no other evidence to show that the employer actually relied on race in making its decision, comments such as Love's cannot defeat summary judgment unless they are related to the employment decision in question. *See Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir.2001). The district court correctly disregarded any racially inappropriate comments made by Love because they bore no relationship to the decision not to promote Moncrief. Love's first such comment—stating to Rochelle Christian that "blacks were looking for a free pass"—referred to his experience growing up in New York City, and was unrelated to any employment decisions. While Christian testified that at her deposition that she *believed* this statement reflected "his beliefs, period, about minorities," she also stated that Love was merely being "silly" at the time. Similarly, Love's comment concerning the hardworking African–Americans portrayed in the film "The Tuskegee Airmen" failed to establish the necessary racial animus because Moncrief admits that Love's casual statements had nothing to do with any employment decisions, and occurred nearly two years before her performance evaluation was conducted.

Finally, Moncrief disputes the district court's holding that evidence of Love's racial opinions was not relevant because his performance evaluation of Moncrief constituted only one part of the hiring decision. Moncrief contends that if she had been given ratings of 5 in all categories—which she allegedly deserved based upon her performance—she would have earned the promotion. Ordinarily only the racially inappropriate statements of the individual who made the final employment decision are relevant to determining whether the hiring process was tainted by discrimina-

tion. *See Logan v. Kautex Textron North America,* 259 F.3d 635, 639 (7th Cir.2001) (upholding summary judgment where individual who made racially charged comments was not final decisionmaker). Moncrief, however, asserts that she would have been promoted "but for" Love's racially-motivated, imperfect performance evaluation of her. Occasionally a lower-level supervisor may be considered a "decisionmaker" because his choices determine the outcome of an employment decision, *see Mateu–Anderegg v. Sch. Dist. of Whitefish Bay,* 304 F.3d 618, 623–24 (7th Cir.2002), but the IRS argues that Conradt and Tomaw accounted for other factors in reaching her final numerical ranking of 51, including the applicants' knowledge, skills, and experience. In any case, because Love's comments are insufficient to establish a racial motive, we need not decide whether he was a decisionmaker for purposes of the IRS's choice to promote Tran.

AFFIRMED.