RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 05a0234p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

GREGORY C. SASSÉ,

*Petitioner,*

*v.*

No. 04-3245

UNITED STATES DEPARTMENT OF LABOR; UNITED
STATES DEPARTMENT OF JUSTICE,

*Respondents.*

>

On Appeal from the Administrative Review Board
of the United States Department of Labor.
Nos. 02-077; 02-078; 03-044.

Argued: February 1, 2005

Decided and Filed: May 31, 2005

Before: SILER, BATCHELDER, and DAUGHTREY, Circuit Judges.

---

## COUNSEL

**ARGUED:** Gregory A. Gordillo, LAW OFFICES OF GREGORY A. GORDILLO, Cleveland,
Ohio, for Petitioner. Edward D. Sieger, UNITED STATES DEPARTMENT OF LABOR,
Washington, D.C., for Respondents. **ON BRIEF:** Gregory A. Gordillo, LAW OFFICES OF
GREGORY A. GORDILLO, Cleveland, Ohio, Steven D. Bell, SIMON LAW FIRM, Cleveland,
Ohio, for Petitioner. Edward D. Sieger, Allen H. Feldman, UNITED STATES DEPARTMENT OF
LABOR, Washington, D.C., for Respondents.

---

## OPINION

---

ALICE M. BATCHELDER, Circuit Judge. Petitioner Gregory Sassé appeals the order of
the Department of Labor's Administrative Review Board ("ARB") dismissing his complaint, which
alleged that his employer, the Department of Justice ("DOJ"), retaliated against him for protected
activity in violation of the whistleblower provisions of three environmental statutes: the Clean Air
Act ("CAA"), 42 U.S.C. § 7622(a), the Solid Waste Disposal Act ("SWDA"), 42 U.S.C. § 6971(a),
and the Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1367(a). Because Sassé did
not engage in a whistleblowing activity protected by these statutes, and because in any event,
Sassé's claims are untimely, we will AFFIRM the decision of the ARB.

**I.**

In 1983 Gregory Sassé was hired as an Assistant United States Attorney ("AUSA") in the Criminal Division of the Cleveland, Ohio, office. After moving around various sections of the Criminal Division, Sassé found his niche as an environmental crimes prosecutor and was appointed by United States Attorney Joyce George to serve as the chairman of the office's newly established environmental crimes task force. In his first environmental case, Sassé prosecuted Nick Bogas, a Cleveland businessman, for illegally dumping hazardous waste at the Cleveland Hopkins International Airport. *See United States v. Bogas*, 920 F.2d 363 (6th Cir. 1990). Adjacent to the land that Bogas used for illegal dumping was a landfill, known as the "south forty," which was owned by the National Aeronautics and Space Administration ("NASA"). Based on his investigation of the *Bogas* case, Sassé concluded that NASA was illegally dumping hazardous waste at the south forty. Though *Bogas* was eventually settled with a plea agreement, Sassé continued to investigate environmental wrongdoing at the airport and the south forty.

In November of 1996, Sassé filed a 64-page complaint with the Department of Labor, alleging that the DOJ had retaliated against him for investigating and prosecuting environmental crimes in violation of the whistleblower provisions of three federal environmental statutes. Specifically, the complaint alleges that the discrimination was "in response to [Sassé's] efforts in promoting the Environmental Crimes Task Force for the Northern District of Ohio, the goal of which Task Force is the initiation of prosecutions for criminal environmental violations, and in response to [Sassé's] efforts in investigation and prosecution of various specific environmental prosecutions . . . ." This alleged discrimination, which began immediately after the indictment in *United States v. Bogas* was handed down, took the form of less favorable performance appraisals, cruel remarks, the imposition of a heavier caseload, and a denial of training and office supplies. The complaint further alleges that DOJ officials assigned Sassé a drunken secretary ("Secretary X") in an effort to harass him.

In October of 1997, while his complaint was pending with the Department of Labor, Sassé made a business proposal to NASA whereby he would leave his employment with the United States Attorney and work for the agency in a private capacity to ensure that it complied with environmental laws. Because Sassé had learned through his work with the DOJ that NASA owned contaminated land, and because he was employed as an AUSA when he submitted the proposal, NASA forwarded Sassé's proposal to the DOJ's Office of the Inspector General. On January 14, 2000, the Executive Office for the United States Attorneys mailed Sassé a letter proposing to suspend him for five days because he had violated two ethical standards: soliciting outside employment that involves a subject matter within the DOJ's area of responsibility in violation of 5 C.F.R. § 3801.106(c), and using a public office for an employee's own private gain in violation of 5 C.F.R. § 2635.702.

Early in the year 2000, a staffer from Congressman Dennis Kucinich's office contacted Sassé and requested that he assist the Congressman in evaluating environmental issues at Cleveland Hopkins Airport. On February 2, 2000, Sassé relayed news of this contact to the First AUSA, who asked him to write a memo detailing his concerns. Sassé's memo concluded that NASA officials were covering up contamination of NASA property near the airport. NASA, DOJ, the Federal Bureau of Investigation and the Environmental Protection Agency all investigated these allegations but unanimously concluded that no prosecution could be undertaken because there was no evidence of a wrongdoing that had occurred within the statute of limitations. On May 2, 2000, the Director of the Executive Office of the United States Attorneys suspended Sassé for five days for his October 1997 attempt to obtain private employment with NASA. The letter that the director sent to Sassé specified that he was being suspended for using government facilities to prepare documents for a private business venture *and* for his improper solicitation of NASA.

An administrative law judge ("ALJ") of the Department of Labor conducted a hearing on Sassé's complaint and issued a written decision on May 8, 2002. The ALJ dismissed all of the claims contained in the complaint because it did not allege that Sassé had engaged in a protected activity. The ALJ reasoned that because Sassé had a duty as an AUSA to prosecute and investigate environmental crimes, these activities were not protected by the whistleblower provisions of the pertinent statutes. However, the ALJ *sua sponte* amended the complaint to include Sassé's May 2000 suspension as an alleged act of retaliation for Sassé's contacts with Congressman Kucinich's office. The ALJ held that the DOJ violated the whistleblower provisions of the pertinent acts by suspending Sassé and recommended awarding compensatory and exemplary damages. The ARB reversed and dismissed Sassé's complaint as untimely. Alternatively, the ARB stated that Sassé's claim failed on the merits but it did not rule on the issue of whether Sassé's work on environmental crimes was protected by the whistleblower provisions of the cited statutes. The ARB also held that the ALJ erred by *sua sponte* amending Sassé's complaint to include his May 2000 suspension. Sassé timely appealed the ARB's ruling.

## II.

We may disturb the Secretary of Labor's decision "only if we find that the decision 'is unsupported by substantial evidence' or if it is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Varnadore v. Secretary of Labor*, 141 F.3d 625, 630 (6th Cir. 1998) (quoting the Administrative Procedure Act at 5 U.S.C. 706(2)(A)). The ARB acts for the Secretary of Labor and is responsible for issuing "final agency decisions." *Id*. at 630. To satisfy the substantial evidence standard, the Board's decisions must be supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *ITT Auto v. NLRB*, 188 F.3d 375, 384 (6th Cir. 1999). "The substantial evidence standard is a lower standard than weight of the evidence and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Painting Co. v. NLRB*, 298 F.3d 492, 499 (6th Cir. 2002) (quoting *NLRB v. Kentucky May Cole Co. Inc.,* 89 F.3d 1235, 1241 (6th Cir. 1996)). "This highly deferential standard of review is not altered merely because the Secretary disagrees with the ALJ, see *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 496 (1951), and we 'defer to the inferences that the Secretary derives from the evidence, not to those of the ALJ.'" *Varnadore*, 141 F.3d at 630 (quoting *Lockert v. United States Dep't of Labor*, 867 F.2d 513, 519 n. 2 (9th Cir. 1989)).

The CAA, SWDA, and FWPCA contain whistleblower provisions, which prohibit an employer from discharging or discriminating against an employee for reporting environmental violations or instituting proceedings resulting from the administration or enforcement of the statutes.[1] To state a claim under the whistleblower provision of an environmental statute, the

---

[1]The CAA, 42 U.S.C. § 7622(a) provides,

No employer may discharge any employee or otherwise discriminate against any employee with respect to his compensation, terms, conditions or privileges of employment because the employee . . .

    (1) commenced, caused to be commenced, or is about to commence or cause to be commenced a proceeding under this chapter or a proceeding for the administration or enforcement of any requirement imposed under this chapter or under any applicable implementation plan,

    (2) testified or is about to testify in any such proceeding, or

    (3) assisted or participated or is about to assist or participate in any manner in such a proceeding or in any other action to carry out the purposes of this chapter.

The SWDA, 42 U.S.C. § 6971(a), provides,

No person shall fire or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter or under

plaintiff must establish that his employer retaliated against him because he engaged in a protected activity. *Simon v. Simmons Foods, Inc.,* 49 F.3d 386, 389 (8th Cir. 1995) (analyzing the whistleblower provisions of the SWDA and FWCPA); *see also American Nuclear Resources*, *Inc. v. United States Department of Labor*, 134 F.3d 1292, 1295 (6th Cir. 1998); *Passaic Valley Sewerage Com'rs v. Department of Labor*, 992 F.2d 474, 481-82 (3d Cir. 1993). Sassé alleges that he engaged in two types of protected activities which subjected him to retaliation by the DOJ: 1) his investigation and prosecution of environmental crimes and 2) his contacts with Congressman Kucinich's office. We consider each type of activity in turn.

Sassé's claim that the DOJ retaliated against him for his participation in the investigation and prosecution of environmental crimes requires us to determine whether the whistleblower provisions of the CAA, SWDA, and FWPCA protect an employee who is merely performing his assigned duties. In *Willis v. Department of Agriculture*, the Federal Circuit held that a Department of Agriculture employee, whose job it was to review farms for compliance with USDA regulations, did not engage in a protected activity under the Whistleblower Protection Act ("WPA"), 5 U.S.C. § 2302(b)(8) by reporting that seven farms were out of compliance. 141 F.3d 1139, 1145 (Fed. Cir. 1998). After observing that the WPA "is intended to protect government employees who risk their own personal job security for the advancement of the public good," the court stated,

> In reporting some of [the farms] as being out of compliance, [Willis] did no more than carry out his required everyday job responsibilities. This is expected of all government employees pursuant to the fiduciary obligation which every employee owes to his employer. Willis cannot be said to have risked his personal job security by merely performing his required duties.

*Id*. at 1144.

*Willis*'s reasoning is equally applicable to the whistleblower provisions of the CAA, SWDA, and FWPCA. By their plain language, these whistleblower provisions protect employees who risk their job security by taking steps to protect the public good. Sassé's job as an AUSA included the investigation and prosecution of environmental crimes, and he therefore had a fiduciary duty to carry out those investigations and prosecutions. Like Willis, Sassé cannot be said to have risked his personal job security by performing the duties required of him in that job. We therefore hold that in performing these duties, Sassé was not engaging in protected activities. *See Huffman v. Office of Personnel Management*, 263 F.3d 1341, 1352 (Fed. Cir. 2001) ("A law enforcement officer whose duties include the investigation of crime by government employees and reporting the results of an assigned investigation to his immediate supervisor is a quintessential example" of conduct that is not protected by the WPA); *Langer v. Department of the Treasury*, 265 F.3d 1259, 1267 (Fed. Cir. 2001) (holding that an IRS employee, whose duty it was to review actions taken by the IRS's Criminal Division, did not engage in activity protected by the WPA by informing DOJ officials that

---

any applicable implementation plan, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter or any applicable implementation plan.

The FWPCA, 33 U.S.C. § 1367(a), provides,

No person shall fire, or in any other way discriminate against, or cause to be fired or discriminated against, any employee or any authorized representative of employees by reason of the fact that such employee or representative has filed, instituted, or caused to be filed or instituted any proceeding under this chapter, or has testified or is about to testify in any proceeding resulting from the administration or enforcement of the provisions of this chapter.

their grand jury investigations disproportionately targeted African-Americans).[2] Accordingly, Sassé cannot state a claim under the whistleblower provisions of these statutes premised on his investigation and prosecution of environmental crimes.

Sassé's claim that the DOJ suspended him in May of 2000 in retaliation for his contact with Congressman Kucinich's office, which he says is a protected activity, is not cognizable in this action. Because Sassé's May 2000 suspension occurred after he initiated this action and was not included in the complaint, the ALJ must have had the power to amend Sassé's complaint in order to consider this issue. An ALJ may amend a complaint to include issues tried by the implied consent of the parties pursuant to 29 C.F.R § 18.5(e), which provides:

> When issues not raised by the pleadings are reasonably within the scope of the original complaint and are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings, and such amendments may be made as necessary to make them conform to the evidence. The [ALJ] may, upon reasonable notice and such terms as are just, permit supplemental pleadings setting forth transactions, occurrences or events which have happened since the date of the pleadings and are relevant to any of the issues involved.

For guidance in determining when an amendment is permissible under 29 C.F.R. § 18.5(e), we will look to cases applying FED R. CIV. P. 15(b), which provides in similar language for amendments to the pleadings to conform with the evidence.[3]

To establish implied consent in the context of Rule 15(b), "it must appear that the parties understood the evidence to be aimed at the unpleaded issue." *Carlisle Equipment Co., v. United States Sec'y of Labor & Occupational Safety*, 24 F.3d 790, 795 (6th Cir. 1994). An "agency may not base its decision upon an issue the parties tried inadvertently . . . [E]vidence introduced at a hearing that is relevant to a pleaded issue as well as an unpleaded issue cannot serve to give the opposing party fair notice that the new, unpleaded issue is entering the case." *Yellow Freight Sys., Inc. v. Martin*, 954 F.2d 353, 358 (6th Cir. 1992). We must examine "whether the employer knew what conduct was in issue and had an opportunity to present his defense." *Id*. (quoting *Soule Glass and Glazing Co. v. NLRB*, 652 F.2d 1055, 1074 (1st Cir. 1981)).

---

[2]We are mindful of precedents such as *Marano v. Department of Justice*, which hold that disclosures of information "that is closely related to the employee's day-to-day responsibilities" may also be protected. 2 F.3d 1137, 1142 (Fed. Cir. 1993); *see also Watson v. Department of Justice*, 64 F.3d 1524, 1530 (Fed. Cir. 1995). We emphasize that we do not hold that Sassé's activities were unprotected merely because they were related to his official duties. Rather, we hold that Sassé's investigation and prosecution of environmental crimes were not protected activities because he had a duty, as an Assistant United States Attorney, to perform them.

[3]Fed. R. Civ. P. 15(b) provides:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

During the hearing on Sassé's complaint, DOJ attorneys asked Sassé questions about his conversation with Congressman Kucinich's office concerning the cleanup of NASA's property and the business proposal he made to NASA. But the testimony elicited by these questions is clearly relevant to both Sassé's credibility—which was at issue in the case—and his suspension—which was not—and it therefore "cannot serve to give [DOJ] fair notice that the new, unpleaded issue is entering the case." *Id.*

Moreover, during the hearing, the DOJ moved to strike evidence concerning the condition of NASA's airport property and the post-complaint Congressional request for Sassé's assistance, arguing that the evidence post-dated the complaint. Sassé's counsel responded that this evidence was relevant to whether the DOJ created a hostile work environment and emphasized that "there is no specific claim related to NASA." The ALJ denied the motion to strike and admitted the evidence, stating, "the matters mentioned go to a continuation of a pattern of violations . . . Besides these matters have been tried these past two weeks and even if were not so, we're – going to amend the complaint to include continuing violations." The record establishes that at the time the evidence relating to that suspension was admitted, neither the ALJ nor Sassé's counsel made it clear that the suspension would be considered as a discrete retaliatory act; rather, their statements at best would have put the DOJ on notice that the suspension could be considered for the purposes of a hostile environment analysis. Finally, in his Recommended Decision and Order, the ALJ admitted that "the issue of whether the incidents occurring after the filing of the complaint would be included in this proceeding as evidence themselves of protected activity was not directly addressed." For these reasons, Sassé's allegation that the DOJ retaliated against him for his contacts with Congressman Kucinich's office cannot support this whistleblower claim.[4]

### III.

Even if Sassé had participated in an activity that is protected by the whistleblower provisions of the CAA, SWDA, and the FWPCA, his claim is barred because it was not timely filed. We review for substantial evidence the ARB's conclusion that a claim was untimely. *Varnadore*, 141 F.3d at 630-31. The CAA, SWDA, and FWPCA require a complainant to file a complaint within 30 days after an alleged violation "occurs." 33 U.S.C. § 1367(b); 42 U.S.C. § 6971(b); 42 U.S.C. § 7622(b)(1). The alleged discriminatory act "occurs" when the employer discharges the plaintiff or otherwise discriminates against him. *Hill v. United States Department of Labor*, 65 F.3d 1331, 1335 (6th Cir. 1995) (analyzing the 30-day statute of limitations on the whistleblower provision of the Energy Reorganization Act, 42 U.S.C. § 5851). Accordingly, those violations which occurred more than 30 days before Sassé filed his complaint on November 25, 1996, are time barred. As the ARB correctly observed, none of the employment actions that Sassé listed in his complaint occurred within this 30-day window.

To circumvent the 30-day limitation on whistleblower actions brought pursuant to the pertinent statutes, Sassé alleges that the DOJ subjected him to a "hostile work environment." In *National R.R. Passenger Corp. v. Morgan*, a Title VII case, the Supreme Court held that all of the acts comprising a hostile work environment claim, including those that would otherwise fall outside of the filing period, are timely so long as at least one act comes within Title VII's filing window. 536 U.S. 101, 117 (2002) ("[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability"). Because we have refused to restrict *Morgan* to Title VII claims, *see Bell v. Ohio State Univ.*, 351 F.3d 240, 247-48 (6th Cir. 2003) and have, in the past, applied a continuing violation analysis in whistleblower cases alleging a hostile work environment, *Holtzclaw*

---

[4]We express no opinion about whether an Assistant United States Attorney engages in a protected activity by speaking with a Congressman about certain aspects of his job. We merely hold that these activities cannot support this whistleblower action because they were neither pled in the complaint nor tried by the implied consent of the parties.

*v. Secretary of Labor*, No. 97-3347, 1999 WL 68745 at \*7 (6th Cir. Jan. 15, 1999); *Varnadore*, 141 F.3d at 630; *see also Williams v. Administrative Review Board*, 376 F.3d 471, 476 (5th Cir. 2004); *English v. Whitfield*, 858 F.2d 957, 963-64 (4th Cir. 1988), we can think of no reason why *Morgan*'s hostile environment analysis is inapplicable to the case at bar. Indeed, there is no material difference between the administrative charge period for Title VII cases that the *Morgan* Court analyzed and whistleblower provisions of the CAA, SWDA, and FWPCA insofar as all four statutes require actions to be filed within a specified time period after the employment action "occurs." *Compare* 33 U.S.C. § 1367(b); 42 U.S.C. § 6971(b); and 42 U.S.C. § 7622(b)(1) *with* 42 U.S.C. § 2000e-5(e)(1).[5]

Sassé contends that the ALJ's *sua sponte* amendment of the complaint to include his May 2000 suspension effectively rendered the complaint timely. Contrary to Sassé's contention, however, we think that, even if the amendment had been proper, his May 2000 suspension was a discrete act that cannot properly be characterized as part of a continuing hostile work environment. A suspension, like a termination, denial of transfer, or refusal to hire, constitutes a separate actionable "unlawful employment practice." *Morgan*, 536 U.S. at 114; *Conley v. Village of Bedford Park*, 215 F.3d 703, 710 (7th Cir. 2000) (holding that a suspension "is a discrete act resulting in a discrete injury"). Sassé's suspension occurred on May 2, 2000, the date on which he received notification of the suspension from the Director of the EOUSA. *See Morgan*, 536 U.S. at 110 ("[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened'"). Under *Morgan*, which holds that a party must file a separate charge within the statutory period or lose the ability to recover for it, Sassé had thirty days from May 2, 2000, to file a claim based on his suspension. *Id*. Because Sassé never filed a separate whistleblower complaint alleging that his suspension was a retaliatory act, he has lost the ability to recover for it.

Sassé also argues that by "re-assigning" Secretary X to him, the DOJ took a discriminatory action within the 30-day window, which anchors his continuing hostile work environment claim. As we noted earlier, a plaintiff alleging a hostile work environment must prove that "an act contributing to the claim" occurred within the filing period before the court may consider those acts which would otherwise be time barred. *Morgan*, 536 U.S. at 117. Sassé's allegation that the DOJ "re-assigned" Secretary X as part of its campaign to harass him, however, is contrary to the allegations Sassé made in his complaint. Paragraph 74 of the complaint alleges that "[Sassé's supervisor] assigned [Secretary X] as complainant's secretary. After continuous problems began with this secretary, complainant requested a new secretary, and continued to do so. To date, [Secretary X] *continues* to be complainant's secretary." (Emphasis added). What is more, the Deputy Chief of Sassé's division testified that Secretary X continued to work for Sassé until 1997 and Sassé himself signed a performance appraisal dated April 8, 1996, which rated Secretary X as "excellent." Substantial evidence supports the ARB's finding that Secretary X was not "re-assigned" to Sassé within the 30-day window.

Sassé cannot base his hostile work environment claim on the DOJ's refusal to transfer Secretary X *away* from him. We have held that "the denial of a request for relief from discrimination does not itself constitute a discriminatory act that tolls the statue of limitations." *Kovacevich v. Kent State University*, 224 F.3d 806, 829 (6th Cir. 2000) (holding that the provost's denial of the Plaintiff's complaint was not an event that would allow her to claim a continuing violation); *see also Janikowski v. Bendix Corp.*, 823 F.2d 945, 948 (6th Cir. 1987) (company's repeated refusals to transfer the employee-plaintiff were not manifestations of a "continuing pattern of discrimination" that tolled the statute of limitations); *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1237 (6th Cir. 1980) ("repeated requests for further relief from a prior act of discrimination

---

[5]Though Title VII's administrative charge period uses the past tense "occurred," and the pertinent whistleblower provisions use the present tense "occurs," we are confident that this distinction makes no difference in the analysis.

will not set the time limitations running anew"). Sassé has failed to identify an act of discrimination with which to anchor his hostile work environment claim. Accordingly, we conclude that all of the adverse employment actions alleged in Sassé's complaint are time barred.

**IV.**

For all of the foregoing reasons, we **AFFIRM** the ARB's order dismissing Sassé's complaint.