JANE B. STRANCH, Circuit Judge,
dissenting.
I respectfully dissent from the majority opinion because I conclude that Taylor stated plausible claims for at least one discrete act of retaliation and for retaliatory harassment. Fed.R.Civ.P. 12(b)(6); *621 Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). I believe we are constrained by precedent, including the Supreme Court’s instruction in National R.R. Passenger Carp. v. Morgan, 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), to reverse and remand the case for further proceedings on these two claims.
The majority disposes of the retaliatory harassment claim by concluding as a matter of law that “the alleged wrongs identified by plaintiff represent discrete acts of alleged retaliation ... rather than acts contributing to a hostile work environment,” and by further concluding that Taylor failed to allege “facts from which the court may infer that plaintiff was subjected to the kind of severe or pervasive harassment that is necessary for a hostile work environment claim at any time-much less during the 45-day period that preceded her initial contact with the EEO counselor on February 13, 2007.” I do not find the admittedly “lengthy” allegations of the complaint susceptible to these summary conclusions and, in my view, such may only be reached by applying a standard at variance with the “plausibility” standard applicable to our Rule 12(b)(6) review.
To formulate a prima facie case of retaliation, Taylor was required to allege that (1) she engaged in protected activity; (2) her employer knew about her exercise of protected rights; (3) the employer thereafter took adverse employment action against her or a supervisor subjected her to severe or pervasive retaliatory harassment; and (4) there was a causal connection between Taylor’s protected activity and the adverse employment action or the retaliatory harassment. See Morris v. Oldham Cnty. Fiscal Court, 201 F.3d 784, 792 (6th Cir.2000). Severe or pervasive retaliatory harassment, like a hostile work environment claim based on race or sex, “is composed of a series of separate acts that collectively constitute one ‘unlawful employment practice.’ ” Morgan, 536 U.S. at 117, 122 S.Ct. 2061; Morris, 201 F.3d at 791-92. “It does not matter ... that some of the component acts of the hostile work environment fall outside the statutory time period [for exhausting administrative remedies].” Morgan, 536 U.S. at 117, 122 S.Ct. 2061. If one retaliatory act “contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.” Id.
Discrete actions, “such as termination, failure to promote, denial of transfer, or refusal to hire,” may constitute retaliatory adverse employment actions that are actionable standing alone. Id. at 114, 122 S.Ct. 2061. But single acts that may collectively comprise a hostile work environment need not be adverse employment actions that are by themselves actionable. Instead, a hostile work environment may be comprised of less severe, but pervasive conduct. Actionable harassment is “not limited to economic or tangible discrimination, and ... covers more than terms and conditions in the narrow contractual sense.” Id. at 115-16, 122 S.Ct. 2061 (internal quotations and citations omitted). Indeed, the cases the majority cites recognize the same distinction. See Clay v. UPS, Inc., 501 F.3d 695, 708 (6th Cir.2007) (distinguishing the “on-going harassment” of a hostile work environment claim from a discrete act of discrimination); Sassé v. U.S. Dep’t of Labor, 409 F.3d 773, 783 (6th Cir.2005) (noting plaintiffs suspension “was a discrete act that cannot properly be characterized as part of a continuing hostile work environment.”). In deciding whether actionable harassment exists, a court must consider the totality of the *622 circumstances, including the frequency of the alleged discriminatory conduct, its severity, whether the conduct is physically threatening or humiliating or a mere offensive utterance, and whether the conduct unreasonably interferes with the employee’s work performance. Morgan, 536 U.S. at 116, 122 S.Ct. 2061.
The majority opinion does not examine the totality of the circumstances alleged to constitute a continuing course of retaliatory harassment, see id. at 117, 122 S.Ct. 2061, but instead dissects Taylor’s claim into “discrete acts of alleged retaliation!!]” Morgan’s teaching that such claims are comprised of a series of acts that “collectively constitute one ‘unlawful employment practice,’ ” id., reveals why such dissection is not appropriate — characterizing the series of events alleged as only discrete acts deprives Taylor of the theory of retaliatory harassment, prevents her from engaging in any discovery on her claims, and precludes her from presenting evidence that might persuade a reasonable jury to find in her favor. Significantly, such approach defies the instruction that, unlike discrete acts, acts of harassment are not defined by their severity, but rather by their “cumulative effect.” Id. at 115, 122 S.Ct. 2061. As the majority observes, Taylor need only allege sufficient facts which, when accepted as true, state a claim to relief that is plausible on its face. See Ashcroft, 129 S.Ct. at 1949.
Taylor met the Rule 12(b)(6) threshold. She alleged that she engaged in protected activity when she made her requests for a reasonable accommodation based on her asthmatic condition. See Coons v. Sec’y of U.S. Dep’t of Treasury, 388 F.3d 879, 887 (9th Cir.2004) (requesting a reasonable accommodation is protected activity). She alleged that she began requesting a reasonable accommodation in February 2005 and she continued to make such requests until February 20, 2007. These requests were either refused or ignored by her supervisors. Taylor contacted the EEO counselor on February 13, 2007. In the forty-five days prior to that EEO contact, Taylor requested a reasonable accommodation on January 24, 2007, but like her other requests, it, too, was ignored. The employer waited until May 2, 2007, to inform Taylor definitively that it would do nothing more to respond to her requests for a reasonable accommodation. Because Taylor has alleged that her employer denied or ignored requests for reasonable accommodation before, during and after the 45-day administrative filing period, I have no difficulty concluding that Taylor’s retaliatory harassment claim was timely under Morgan.
Taylor also met the Ashcroft/Iqbal standard in alleging the severity or pervasiveness of the harassment directed to her by supervisors in retaliation for making the requests for a reasonable accommodation. She alleged that managers refused to cooperate with her to locate the cause of her breathing difficulties, failed to investigate diligently any environmental irritants, disingenuously offered her positions that did not accommodate her medical problem, and did not engage in a timely, good faith “interactive process” to reach a reasonable accommodation or place her in a work environment more appropriate to her medical condition, despite numerous notes from medical doctors documenting the need for such a transfer. Taylor further alleged that managers consistently maintained the only chemicals used to clean the machines in Taylor’s work area were nontoxic; yet, by late June 2006, manager Charlean Bonds knew that a toxic chemical Taylor claimed exacerbated, if not caused, her asthma was, in fact, used to lubricate the machines in Taylor’s work area. Bonds hid her knowledge of the use of this chemical until Taylor inadvertently learned of it in February 12, 2007, prompting her *623 to contact the EEO counselor the next day. Taylor also alleged that, rather than cooperate with her, the Postal Service terminated the employment she had held for seven years. These and other facts alleged, taken in their totality and viewed in their cumulative effect, as we are required to do, are sufficient to state a plausible claim that Taylor was subjected to pervasive retaliatory harassment that was causally connected to her requests to accommodate her medical condition. Taylor should be permitted to litigate that claim.
Turning to discrete acts of retaliation, Morgan makes clear that any timely acts alleged must have occurred within the 45 days prior to February 13, 2007, when Taylor contacted the EEO counselor, absent proper application of an equitable tolling doctrine to some untimely event. Morgan, 536 U.S. at 114, 122, 122 S.Ct. 2061. Taylor alleges Bonds’s knowledge of the use of a toxic chemical in the work environment in June 2006 and her failure to disclose that information promptly to Taylor constituted retaliation for Taylor’s requests for accommodation. In accordance with Taylor’s equitable tolling argument, I find this sufficient to state a timely claim.
The majority states that, even accepting as true Taylor’s allegation that Bonds falsely denied the use of the chemical, “plaintiff does not suggest how this denial prevented her from suspecting that the alleged failures to accommodate were motivated by discrimination or retaliation.” To the contrary, Taylor was unaware of Bonds’s knowledge until February 12, 2007, when Taylor read an email confirming that Bonds knew the toxic chemical of which Taylor complained was used to lubricate the machines in Taylor’s work area. It was only by reviewing this email that Taylor learned about Bonds’s knowledge and therefore suspected that her supervisors’ conduct was “driven by a desire to retaliate against [her] for her accommodation requests, which ultimately led to her employment termination. See Dixon v. Gonzales, 481 F.3d 324, 332-33 (6th Cir.2007). Taylor did not wait until she was certain that retaliation played a role in her managers’ decisions before seeking EEO counseling, “but only until [she] was ‘aware of the possibility that [she] had suffered an adverse employment action” because of illegal retaliation. Id. at 333. Once Taylor realized the possibility that she had been a victim of illegal conduct by her employer, she immediately contacted the EEO counselor the very next day. Therefore, under Dixon, she demonstrated entitlement to equitable tolling.
Because I believe governing precedent establishes that Taylor has stated a plausible claim for relief, I respectfully dissent.