# Third District Court of Appeal

## State of Florida

Opinion filed October 13, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-1307
Lower Tribunal No. 11-35238
_____

**Victor Igwe,**
Appellant,

vs.

**City of Miami,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, John Schlesinger, Judge.

Amlong & Amlong, P.A., and William R. Amlong, Karen Coolman Amlong, and Ryan C. Brenton (Fort Lauderdale), for appellant.

Victoria Méndez, City Attorney, and Kerri L. McNulty, Assistant City Attorney, for appellee.

Themis Law Group, LLP, and Brian Calciano (St. Petersburg); Delegal Law Offices, P.A., and T.A. "Tad" Delegal, III (Jacksonville), for National Employment Lawyers Association, Florida Chapter, as amicus curiae.

Before SUAREZ, C.J., and ROTHENBERG and FERNANDEZ, JJ.

ROTHENBERG, J.

Victor Igwe ("Igwe") appeals the trial court's entry of final summary judgment in favor of the City of Miami ("the City"), disposing of Igwe's retaliatory discharge claim, which was brought pursuant to section 112.3187, Florida Statutes (2011) ("the Whistle-blower's Act" or "the Act"), based on the trial court's conclusion that Florida whistle-blower protection does not extend to individuals who report misconduct as a part of their job description. Because we conclude that the trial court erred in its determination that Igwe was precluded from whistle-blower protection on the ground that he reported the City's misconduct while carrying out his duties as the Independent Auditor General ("IAG") for the City, we reverse.

**BACKGROUND**

According to the City Charter, the position of IAG was created in order to provide independent oversight and audit functions for the City, and the IAG has a duty to report to the City Commission regarding his conclusions and financial analysis. Miami, Fla. Charter, § 48. It is undisputed that, as part of his job, Igwe disclosed to the City Commission and the City's Mayor several instances of alleged misconduct between 2009 and 2011, including the following:  (1) a report finding that the City had violated its financial integrity principles by engaging in

2

improper interfund borrowing; (2) a report identifying the improper transfer of restricted Local Option Fuel Tax revenues into the City's general fund; (3) a report identifying another improper transfer of restricted stormwater utility revenues into the City's general fund; and (4) a report that the City was continuing to improperly transfer restricted revenues into the City's general fund, even after the issuance of the prior reports. Igwe also issued a report to the City Commission and the City's Audit Advisory Committee, disclosing that the City Attorney had overpaid herself.

During this time period, the United States Securities and Exchange Commission ("SEC") and the Federal Bureau of Investigation ("FBI") also began investigating the City. In the course of its investigation of the City's potential securities law violations, the SEC subpoenaed Igwe to testify about the City's alleged misconduct. Igwe complied with the SEC's subpoena and testified. It is undisputed that Igwe's disclosures to the SEC and the reports to the City Commission were made in accordance with Igwe's job duties as IAG.

Thereafter, the City declined to renew Igwe's contract as IAG. In response, Igwe filed a one-count complaint, alleging that the City retaliated against him by declining to renew his contract in response to his issuance of the written reports and cooperation and testimony before the SEC.[1] The City moved for summary

---

[1] We do not express an opinion regarding whether Igwe suffered retaliatory action pursuant to section 112.3187(4), as that issue has yet to be decided by the court below.

3

judgment, arguing that (1) Florida's whistle-blower protection only applies to those who make voluntary disclosures of misconduct, (2) Igwe's disclosures were not voluntary because they were required as a part of his job, and thus (3) Igwe was not protected by the Act.

The trial court entered an order granting the City's motion for summary judgment. Specifically, the trial court found that Igwe's disclosures were not voluntary because his disclosures consisted of "things that the job obligated him to report," and his cooperation with outside agencies like the SEC and the FBI were also a part of his job as IAG. The trial court also found that although Florida common law does not specifically address the issue, federal law in whistle-blower cases, see Sassé v. U.S. Dep't of Labor, 409 F.3d 773 (6th Cir. 2005); Huffman v. Office of Pers. Mgmt., 263 F.3d 1341 (Fed. Cir. 2001), supports the trial court's conclusion that "plaintiffs do not engage in protected activity by disclosing violations of law as part of their job responsibilities." Therefore, the trial court concluded that Igwe's disclosures are not protected by the Whistle-blower's Act. Thereafter, Igwe timely appealed.[2]

_____

[2] We note that the federal case law cited to by the trial court in support of its conclusion that plaintiffs cannot avail themselves of whistleblower protection if their disclosures were required as a part of their jobs has been superseded by statute. Balko v. Ukrainian Nat'l Fed. Credit Union, 2014 WL 1377580, at *18 (S.D.N.Y. Mar. 28, 2014) (noting that "[i]n 2012, however, Congress overruled the reasoning of those cases by [amending the federal whistleblower statute to state] that an employee is not excluded from whistleblower protection simply because her disclosure is made during the normal course of duties.") (internal quotation

## ANALYSIS

We review the trial court's entry of summary judgment de novo. <u>Volusia Cnty. v. Aberdeen at Ormond Beach, L.P.</u>, 760 So. 2d 126, 130 (Fla. 2000). Summary judgment is only appropriate if there are no issues of material fact, and the moving party is entitled to judgment as a matter of law. Fla. R. Civ. P. 1.510(c). We also review the trial court's interpretation of a statute de novo. <u>Bay Cnty. v. Town of Cedar Grove</u>, 992 So. 2d 164, 167 (Fla. 2008).

As this case involves the interpretation of a statute, it is important to bear in mind that the polestar of statutory interpretation is the Legislature's intent. <u>Meeks ex rel. Estate of Meeks v. Florida Power & Light Co.</u>, 816 So. 2d 1125, 1131 (Fla. 5th DCA 2002), <u>approved sub nom</u>, <u>BellSouth Telecomms. Inc. v. Meeks</u>, 863 So. 2d 287 (Fla. 2003). Additionally, a single provision of a statute cannot be read in isolation, and it must be construed together with other provisions which relate to the same subject matter. <u>Florida Dep't of Highway Safety & Motor Vehicles v. Hernandez</u>, 74 So. 3d 1070, 1077 (Fla. 2011) (stating that related statutory provisions should be read in pari materia). We are also mindful that statutes should not be interpreted in such a way that leads to an absurd or unreasonable result. <u>Amente v. Newman</u>, 653 So. 2d 1030, 1032 (Fla. 1995); <u>Yeste v. Miami Herald Publ'g Co., a Div. of Knight-Ridder Newspapers</u>, 451 So. 2d 491, 493 (Fla. 3d

omitted). Thus, we find that the trial court erred in relying on these federal cases and decline to discuss them further.

5

DCA 1984) ("We are, of course, constrained by law to give full effect to the legislative purpose behind a statute and to avoid constructions which lead to absurd or unreasonable results.").

## I. Florida's Whistle-blower's Act

Before we address the particular arguments raised by the City, we briefly discuss the statutory context within which the parties' disputes appear. We begin with the construction of section 112.3187(2), which sets forth the Florida Legislature's express intent when passing the Act:

> It is the intent of the Legislature to **prevent agencies** or independent contractors from taking retaliatory action against an **employee** who reports to an appropriate agency violations of law on the part of a public employer or independent contractor that create a substantial and specific danger to the public's health, safety, or welfare. It is further the intent of the Legislature to **prevent agencies** or independent contractors from taking retaliatory action against **any person** who discloses information to an appropriate agency alleging improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee.

§ 112.3187(2) (emphasis added).

The Act defines "agency" as "any state, regional, county, local, or municipal government entity, whether executive, judicial, or legislative; any official, officer, department, division, bureau, commission, authority, or political subdivision therein; or any public school, community college, or state university." § 112.3187(3)(a). The Act defines "employee" as "a person who performs services

6

for, and under the control and direction of, or contracts with, an agency or independent contractor for wages or other remuneration." § 112.3187(3)(b). Thus, the Act was drafted with the intention of preventing the City, which falls under the definition of "agency," from taking retaliatory action against Igwe, who falls under both the definition of "employee" and the plain meaning of "any person," so long as the additional express requirements set forth in the Act are met. Two such requirements, which are set forth in sections 112.3187(6) and 112.3187(7), are in dispute in the instant case. We address each section in turn.

## II. **Igwe's disclosures were made to the correct entity under the Act**

Section 112.3187(6) identifies to whom a disclosure **must** be made:

> **TO WHOM INFORMATION DISCLOSED.**—The information disclosed under this section **must** be disclosed to any agency or federal government entity having the authority to investigate, police, manage, or otherwise remedy the violation or act, including, but not limited to, the Office of the Chief Inspector General, an agency inspector general or the employee designated as agency inspector general under s. 112.3189(1) or inspectors general under s. 20.055, the Florida Commission on Human Relations, and the whistle-blower's hotline created under s. 112.3189. However, **for disclosures concerning a local governmental entity, including any regional, county, or municipal entity, special district, community college district, or school district or any political subdivision of any of the foregoing, the information must be disclosed to a chief executive officer as defined in s. 447.203(9) or other appropriate local official.**

(emphasis added). Igwe's disclosures concerned the City, a "local government entity." Therefore, to comply with the this provision, he was required to make his

7

disclosures to either the City's chief executive officer or to another "appropriate local official." The phrase, "other appropriate local official," has been interpreted to mean "an official or official entity who is affiliated with the violating governmental entity and **has the authority to investigate**, police, manage, or otherwise remedy the violation or act by the violating governmental entity." Rustowicz v. N. Broward Hosp. Dist., 174 So. 3d 414, 424 (Fla. 4th DCA 2015) (emphasis added); see also Quintini v. Panama City Hous. Auth., 102 So. 3d 688, 689 (Fla. 1st DCA 2012).

The City Commission has the authority to "**investigate** the financial transactions of any office or department of the city government and the official acts and conduct of any city official, and by similar investigations may secure information upon any matter." See Miami, Fla. Charter, § 14 (emphasis added). Consequently, it is clear that the City Commission is an "appropriate local official" regarding the City's alleged misconduct. We therefore find as a matter of law that Igwe's disclosures to the City Commission satisfy the requirements of section 112.3187(6). Additionally, there is nothing in the statute to suggest that Igwe was thereafter prohibited from discussing his disclosures when subpoenaed by the SEC. In fact, as our analysis of section 112.3187(7) reveals, the Act expressly protects such disclosures.

III. **Igwe is a protected person under the Act**

8

Section 112.3187(7) lists precisely who may receive protection under the Act:

> **EMPLOYEES AND PERSONS PROTECTED.** This section protects employees and persons who disclose information on their own initiative in a written and signed complaint; who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity; who refuse to participate in any adverse action prohibited by this section; or who initiate a complaint through the whistle-blower's hotline or the hotline of the Medicaid Fraud Control Unit of the Department of Legal Affairs; or employees who file any written complaint to their supervisory officials or employees who submit a complaint to the Chief Inspector General in the Executive Office of the Governor, to the employee designated as agency inspector general under s. 112.3189(1), or to the Florida Commission on Human Relations[.]

(emphasis added). A plain reading of the statute indicates that there are five categories of protected persons. See Rustowicz, 174 So. 3d at 420-21 ("[T]he statute extends protection to five categories of employees[.]"). Each category is independent, as the list is separated by the use of semicolons and by the word "or," which "as used in a statute, is a disjunctive article indicating an alternative." See TEDC/Shell City, Inc. v. Robbins, 690 So. 2d 1323, 1325 (Fla. 3d DCA 1997) (quoting 49 Fla. Jur. 2d *Statutes* § 137, at 179 (1984)). A person who qualifies under **any** of these categories will be, by the operation of the plain language of the text, a person protected by the Act. See Rustowicz, 174 So. 3d at 421-22 (holding that an audit associate, who qualified for protection under the Act because she was

requested to participate in an investigation, did not need to make her disclosures in writing or on her own initiative).

Thus, Igwe is a protected person under section 112.3187(7), as his disclosures to the City Commission are covered under the category "employees who file any written complaint to their supervisory officials," while his subsequent disclosures to the SEC are covered under the category of persons "who are requested to participate in an investigation, hearing, or other inquiry conducted by any agency or federal government entity."

The City argues, and the trial court found, that the Act does not protect those who make disclosures as a part of their job description. Specifically, the City argues that: (1) the words "on their own initiative" in section 112.3187(7) means that any disclosures under the Act must be voluntarily offered; (2) the words "on their own initiative" apply to each of the five categories of protected persons under section 112.3187(7); (3) disclosures made while performing the duties of one's job are not voluntary; and therefore, (4) Igwe's disclosures were not protected by the Act, as he was required to make the disclosures in the course of doing his job as the IAG. We disagree with the City's interpretation for several reasons.

First, we note that the City's interpretation of "on their own initiative" runs contrary to the stated purpose of the Act, which is to prevent employers, such as the City, from taking retaliatory action against "**any person**" who properly

discloses "improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee." § 112.3187(2) (emphasis added). The phrase "any person" clearly encompasses those who make disclosures because it is their job to do so, and those who make disclosures even though they have no employment obligation to do so.

Second, the Florida Supreme Court has unequivocally stated that the Act is a remedial statute, and should be liberally construed in favor of granting access to protection from retaliatory actions. Irven v. Dep't of Health & Rehabilitative Servs., 790 So. 2d 403, 406 (Fla. 2001) (stating that "[section 112.3187(2)] could not have been more broadly worded"); Martin Cnty. v. Edenfield, 609 So. 2d 27, 29 (Fla. 1992); Hutchison v. Prudential Ins. Co. of Am., 645 So. 2d 1047, 1049 (Fla. 3d DCA 1994). Contrary to these authorities, the City's interpretation of "on their own initiative" as a prerequisite rather than as an option, would be a very strict and narrow reading of the Act, which would foreclose the possibility of whistle-blower protection for a large segment of the population, and be in contravention of section 112.3187(2), which affords statutory protection against retaliatory action against "any person" who properly discloses the improper conduct to the appropriate agency.

For example, the City's interpretation would foreclose the possibility of whistle-blower protection for those whose job it is, in whole or in part, to manage,

11

report, or supervise governmental misconduct. Consider a manager, a foreman, or an administrator of a public or governmental agency who is tasked with supervising the employees of that entity. If such a person reports to his boss that the governmental entity is placing its employees at a substantial risk of injury due to the failure to provide these employees with the required safety equipment, then under the City's interpretation of "on their own initiative," he would not be protected by the Act if he was fired in retaliation for reporting the misconduct. This interpretation would be unreasonable and contrary to the express intent of the Legislature.

In summary, the City's interpretation of the statute runs contrary to the plain meaning of the language contained in the Act and the express intent of the Legislature to protect "any person" who discloses such misconduct. It also contradicts the requirement that the remedial statute be liberally construed to favor access to the statutory remedy, and significantly limits the number of people who may seek whistle-blower protection after disclosing governmental misconduct. We therefore reject the City's interpretation and hold that section 112.3187(7) protects those who make disclosures regarding "improper use of governmental office, gross waste of funds, or any other abuse or gross neglect of duty on the part of an agency, public officer, or employee," even if they do so in the course of carrying out their job duties.

## CONCLUSION

Based on our finding that section 112.3187(7), when read in pari materia with the rest of the statute, protects persons such as Igwe, whose job it was to make disclosures regarding improper governmental conduct, we conclude that the trial court erred by entering final summary judgment in favor of the City. We, therefore, reverse and remand for further proceedings. We find that the City's remaining arguments are meritless, and thus we decline to discuss them further.

Reversed and remanded.