Hoi Thi HUYNH, Plaintiff–Appellant,

v.

Irene M. DAMOTA, individually and in her official capacity as Principal of Roberto Clemente Community Academy, and Chicago Board of Education, Defendants–Appellees.

No. 02–2675.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 10, 2003.

Decided April 25, 2003.

Before POSNER, MANION, and KANNE, Circuit Judges.

## ORDER

Hoi Thi Huynh, an Asian woman of Vietnamese national origin and a teacher at Roberto Clemente Community Academy ("Roberto Clemente"), sued her employer the Chicago Board of Education ("Board")

and Irene M. Damota ("Damota"), individually and in her official capacity as principal of Roberto Clemente, alleging that: (1) the Board discriminated and harassed her on the basis of her race, national origin, and sex, and retaliated against her, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) the Board and Damota discriminated dagainst and harassed her on the basis of race in violation of 42 U.S.C. § 1981; and (3) the Board and Damota retaliated against her for exercising her First Amendment rights in violation of 42 U.S.C. § 1983.

The district court dismissed the § 1983 retaliation claim against Damota and granted the Board's motion to strike allegations in the amended complaint related to conduct occurring more than 300 days prior to the filing of the Title VII charges.[1] Thereafter, the defendants moved for summary judgment with respect to the remaining claims, which the district court granted.[2] Huynh then filed a motion for reconsideration, which the district court denied. Huynh appeals, arguing that the district court erred in granting the defendants summary judgment on her Title VII and § 1981 discrimination and harassment claims.[3] We review the district court's decision granting summary judgment *de novo*, construing all facts in favor of Huynh, the nonmoving party, *Commercial Underwriters Ins. Co. v. Aires Envtl. Ser-*

---

1. Huynh filed her Title VII charge of discrimination on June 15, 2000, and her original complaint on April 23, 2001. Thus, the district court held that conduct occurring prior to August 19, 1999 was time barred for purposes of Huynh's Title VII claims. *See* 42 U.S.C. § 2000e–5(e).

2. In its order granting the defendants' motion for summary judgment, the district court concluded that conduct occurring prior to April 23, 1999 was time barred for purposes of her §§ 1981 and 1983 claims. *Smith v. City of Chicago Heights*, 951 F.2d 834, 836–37 n. 1

(7th Cir.1992) (noting that statute of limitations for §§ 1981 and 1983 claims arising in Illinois is two years); *see also* 735 ILCS § 5/13–202.

3. Although Huynh appears to suggest that the district court erred in dismissing or granting summary judgment on her Title VII and § 1983 retaliation claims, she makes no attempt to develop any arguments on appeal with respect to the validity of these claims and thus has waived them. *Gable v. City of Chicago*, 296 F.3d 531, 538 (7th Cir.2002).

vices, Ltd., 259 F.3d 792, 795 (7th Cir. 2001), and the court's denial of the plaintiff's motion for reconsideration for an abuse of discretion. *Britton v. Swift Transp. Co., Inc.*, 127 F.3d 616, 618 (7th Cir.1997).

Huynh's first argument on appeal is that a genuine issue of material fact remains as to whether she suffered a "tangible" (i.e., adverse) employment action during her employment with the Board sufficient to prove a claim of discrimination under either Title VII or § 1981. *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 806 (7th Cir.1999) (noting that this circuit employs the same analytical framework to Title VII and § 1981 claims). Huynh contends that she suffered an adverse employment action because the defendants: (1) altered her position by reassigning her to teach a remedial skills class that she was not certified to teach; (2) required her to clean out a storage room in order to have a classroom to teach her students; and (3) changed her teaching program three times during the 1999–2000 school year.[4] We disagree.

To establish that she suffered an adverse employment action, Huynh must show that: (1) her "compensation, fringe benefits, or other financial terms of employment [were] diminished ... [or the] termination of [her] employment"; (2) "a nominally lateral transfer with no change in financial terms significantly reduce[d] [her] career prospects by preventing [her] from using the skills in which [she] is trained and experienced, so that the skills are likely to atrophy and [her] career is likely to be stunted," or, even in the absence of a transfer, that her job was "changed in a way that injure[d] [her] career"; or (3) "the *conditions* in which [she] works are changed in a way that subjects [her] to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in [her] workplace environment—an alteration that can fairly be characterized as objectively creating a hardship...." *Herrnreiter v. Chicago Housing Auth.*, 315 F.3d 742, 744 (7th Cir.2002). None of the actions alleged by Huynh, however, falls into any of these categories.

First, Huynh does not allege that any of the actions taken against her reduced her compensation or employment benefits. Second, Huynh offers no evidence that the defendants' actions significantly reduced her career prospects or otherwise

---

**4.** In addition to the foregoing arguments, Huynh also claims that the defendants discriminated against her when, in January 1999, they: (1) "assigned [her] to teach only one double-period of algebra class rather than a normal five-class teaching schedule"; (2) changed "her homeroom assignment ... without explanation to a group of double-demoted freshmen with emotional behavior problems"; and (3) did not provide her with teaching supplies that she ordered. However, even were we to assume that each of the foregoing constituted an adverse employment action, Huynh cannot maintain a claim of discrimination based on any of these actions because all of them took place in January 1999, well outside the applicable limitations periods discussed *supra* in n. 1 & 2, and are therefore time barred. *National R.R. Passen-*

*ger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002) (holding that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"). And while Huynh is not precluded from using these prior acts as background evidence in support of her timely claims, *id.*, she offers no explanation on appeal as to how the time barred acts, if true, support these claims. In the absence of such an argument, Huynh has waived the issue. *Gable*, 296 F.3d at 538; *see also Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995) (noting that "just as a ... court is not required to 'scour the record looking for factual disputes,' it is [also] not required to scour the party's various submissions to piece together appropriate arguments") (citation omitted).

injured her career. Third, for the reasons noted *infra*, we conclude that even if the defendants engaged in all of the foregoing actions, Huynh has not shown that this conduct negatively altered her workplace environment to such a degree as to "fairly be characterized as objectively creating a hardship." *Herrnreiter*, 315 F.3d at 744.

Huynh argues that the defendants' decision to assign her to teach remedial skills classes constituted an adverse employment action because "[s]kills classes were reading workshops taught by reading teachers and involved no teaching of mathematics [her area of expertise]," and because "the skills classes were intended to enhance the students' English language skills, and English was not Ms. Huynh's native language." We find this argument unpersuasive. According to defendant Damota, the purpose of a basic skills class is to "identify overall areas of need for students and to assist them in deficient areas," and "can be taught by any certified teacher." Huynh does not challenge the truthfulness of this assertion on appeal, and, more importantly, conceded during a deposition below that she was certified to teach all of the classes to which she was assigned during her tenure at Roberto Clemente.[5]

Next, Huynh contends that she suffered an adverse employment action when the defendants required her to clean out a storage room in order to have a classroom to teach her students. Although we have no doubt that this chore was not a pleasurable experience, Huynh points to nothing in the record which would suggest that this directive materially altered her workplace environment to such a degree as to interfere with her ability to perform her duties as a teacher, i.e., that the classroom was defective in any way, unsuitable for teaching, or that it was different from any other classroom she had previously been assigned. *See Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir.1996)(noting that "[n]ot everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that 'an ... employee did not like would form the basis of a discrimination suit' ") (citation omitted).

Finally, Huynh argues that she suffered an adverse employment action when the defendants changed her teaching program three times during the 1999–2000 school year. In making this assertion, however, she fails to give any details whatsoever to support her claim, and therefore has waived the issue. *Gable*, 296 F.3d at 538; *Little*, 71 F.3d at 641. But even in the absence of such a waiver, it is highly unlikely that Huynh could demonstrate that she suffered an adverse employment action on this basis. The parties' briefs only

---

**5.** Furthermore, the defendants' assignment of Huynh to teach basic skills classes came about as a result of Huynh's stated intention, at the conclusion of the 1998–1999 school year, that "she was planning to take a leave of absence the next school year to visit her sick mother in Vietnam." Indeed, when Huynh arrived at Roberto Clemente at the beginning of the 1999–2000 school year she had no teaching assignment whatsoever, and only received one when defendant Damota, in an effort to accommodate Huynh's surprise return, approved the decision to have her assigned to teach four basic skills classes and one English-as-a-second-language class to Vietnamese bilingual students. Thus, even assuming this assignment could be fairly characterized as an adverse employment action, the defendants gave a legitimate, nondiscriminatory reason for assigning Huynh to teach these classes, the truthfulness of which Huynh does not contest on appeal. *Ghosh v. Indiana Dept. of Envtl. Mgmt.*, 192 F.3d 1087, 1091–92 (7th Cir.1999)(holding that when an employer offers a legitimate, nondiscriminatory reason for an employment decision, the complaining employee must show that the proffered reason was pretextual in order to reverse a grant of summary judgment in the employer's favor).

**980**

make mention of two changes in Huynh's teaching program during the 1999–2000 school year: (1) reassigned from teaching basic skills classes to advanced algebra/trigonometry on January 28, 2000; and (2) being reassigned from teaching advanced algebra/trigonometry to general algebra on March 31, 2000; neither of which, without more, constitutes an adverse employment action.[6] *Crady v. Liberty Nat'l Bank & Trust Co. of Ind.,* 993 F.2d 132, 136 (7th Cir.1993)(holding that "a materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities"); *see also Grayson v. City of Chicago,* 317 F.3d 745, 750 (7th Cir.2003)(holding that an employee cannot establish an adverse action on the basis that a reassignment deprives her of prestige); *Place v. Abbott Laboratories,* 215 F.3d 803, 810 (7th Cir.2000)(holding that "being shifted to an essentially equivalent job that [an employee] did not happen to like as much does not a Title VII claim create").[7]

Huynh's final argument on appeal is that a genuine issue of material fact remains as to whether she was harassed, in the form of a hostile work environment, under Title VII and § 1981. Specifically, she claims that during the relevant time period the defendants "continually harassed, reprimanded, criticized, threatened and subjected [her] to demeaning treatment." In doing so, however, she only references three incidents of harassment: (1) assigning her to teach basic skills classes; (2) requiring her to clean out a storage room in order to conduct a class; and (3) falsely accusing her of violating school policy by not returning keys on two occasions. Accepting all of the foregoing incidents as true, Huynh has clearly not shown that her work environment was "hellish" enough to give rise to hostile work environment claim. *Logan v. Kautex Textron North America,* 259 F.3d 635, 641 (7th Cir.2001).

Given the foregoing, we conclude that the district court properly granted the defendants' motion for summary judgment, and, therefore, AFFIRM the court's decision.

**6.** It is also worth noting that the defendants' reassignment of Huynh from basic skills classes to advanced algebra was made in response to a union grievance filed by Huynh in which she complained about having not been assigned to teach any math classes for that school year. The defendants decided to reassign Huynh from teaching advanced algebra/trigonometry to general algebra because the overwhelming majority of her students were failing. Thus, even assuming these reassignments could be characterized as adverse employment actions, the defendants have offered legitimate, nondiscriminatory reasons for their actions, the truthfulness of which Huynh does not adequately challenge on appeal. *Ghosh,* 192 F.3d at 1091–92.

**7.** Because Huynh is unable to show that she suffered an adverse employment action, and thus cannot establish a *prima facie* case of discrimination, we need not address her argument that similarly situated employees not in the protected classes at issue were treated more favorably by the defendants. *DeLuca v. Winer Indus., Inc.,* 53 F.3d 793, 798 (7th Cir.1995)(holding that employee "cannot defeat a motion for summary judgment simply by raising a genuine issue of fact as to one element of the *prima facie* case. Rather, he must establish all four elements, or create a genuine issue with regard to them.").