*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 14-CV-337

DONALD M. MCCALL, APPELLANT,

v.

D.C. HOUSING AUTHORITY, *et al.*, APPELLEES.

Appeal from the Superior Court
of the District of Columbia
(CAB-8225-12)

(Hon. Thomas J. Motley, Trial Judge)

(Submitted February 26, 2015          Decided November 19, 2015)

*F. Douglas Hartnett* was on the brief for appellant.

*Alfred L. Scanlan, Jr.*, and *James N. Markels* were on the brief for appellee.

Before WASHINGTON, *Chief Judge*, MCLEESE, *Associate Judge*, and BELSON, *Senior Judge*.

BELSON, *Senior Judge*: Appellant Donald McCall filed a complaint against the District of Columbia Housing Authority (DCHA) and four DCHA police officers based on the District of Columbia Whistleblower Protection Act (WPA), D.C. Code §§ 1-615.51-59 (2012 Repl.), on October 19, 2012. He now appeals from the trial court's order dismissing his complaint as barred by the applicable

one-year statute of limitations.[1] We reverse, holding (1) that McCall should have the opportunity to demonstrate that the defendants violated the WPA by bringing about a hostile work environment that persisted into the limitations period, and (2) that regardless of the success or failure of McCall's hostile work environment claim, his termination as alleged constituted a discrete violation of the statute that independently triggered the limitations period.

## I.     Facts

We summarize the facts as alleged in the complaint, taking them as true for purposes of reviewing the order dismissing the complaint. On January 5, 2011, McCall was working as a Special Police Officer (SPO) for DCHA when he arrested a man known as "Black" for violating a DCHA notice barring him from entering the Garfield Terrace apartments. After the arrest, McCall found marijuana, cocaine, and drug paraphernalia on the arrestee's person and in the apartment where he was found. At this point McCall called for back-up, and "after

---

[1]  D.C. Code § 1-615.54 (a)(2) ("A civil action [alleging a violation of § 1-615.53 of the Whistleblower Protection Act] shall be filed within three years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first.").

arriving on the scene a Metropolitan Police unit from the 3rd District assisted him in searching the apartment for additional drugs and other contraband (guns)."[2]

Other members of the DCHA police force arrived, and instructed McCall to give the arrestee a new five-year barring notice. They then removed the arrestee's handcuffs, and told him he was free to go. When McCall asked why, he was told that the order came from a supervisor, Sergeant Clarence Major and that he should "go home." Standard police forms documenting the arrest were not created, the drugs and drug paraphernalia were not seized or properly processed and, McCall alleges, they may instead have been sold or returned to drug dealers in the community.

When McCall later asked Sergeant Major about the drugs, Sergeant Major replied "[l]ook I'm not the one who's going to look bad here I'm going to put it on you." McCall wrote a standard statement detailing the events of January 5. Lieutenant Johnnie Villines, DCHA Police Region Commander, asked another officer ("E") who had been on duty that night to lie in a manner that incriminated

---

[2] The complaint contains little further discussion regarding the role played by the Metropolitan Police Department (MPD), except for mention of the fact that the Third District's records contained no documentation of the arrest and subsequently discovered contraband.

McCall instead of the other officers involved, but "E" refused and as a result suffered punishment by DCHA authorities. Subsequently, a "campaign of harassment" began against McCall, involving excessive and repeated scrutiny and false accusations of workplace blunders. The goal of this campaign was to force McCall to quit or to find a pretext for firing him.

On or about April 5, 2011, McCall was ordered to attend a class on the District's disorderly conduct statute at the MPD Training Academy. During a break in the class, Lieutenant Julia Meyers called McCall back to DCHA headquarters. As McCall walked into the building, Officer Floyd Flavors stated that he would kill McCall if he continued to push the issue of the stolen narcotics. In the meeting with Lieutenant Meyers, McCall was accused of impersonating a police officer based on information that he reported to the class without his badge—a situation that McCall had remedied by retrieving his badge from his car. Nevertheless, McCall was placed on administrative leave on that same day, April 5, 2011, while the false impersonation charge was investigated—actions that McCall views as retaliatory. DCHA officials sought a warrant for his arrest, but were unable to obtain the cooperation of the U.S. Attorney. No charges were ever filed against McCall regarding the incident.

McCall was eventually reinstated, but he became very sick, and also feared for his life. Because his medical issues and fear rendered him unable to return to work, he left his home to live with family in the state of New York. As late as May 17, 2011, McCall voiced his concerns about the incidents of January 5, 2011, to various persons with the DCHA, including Lieutenant Villines and Nicole Mason, an attorney with the DCHA. He submitted a claim for worker's compensation, but Lieutenant Villines refused to help him with his paperwork, and insisted that he return to work even after a physician had certified that McCall should not be working. This refusal persisted even after McCall's attorney re-submitted the worker's compensation claim with full documentation. Around the third week of November, McCall received by mail a notice stating that his employment had been terminated, effective October 21, 2011.

## II.    Procedural History

McCall filed the instant complaint against the DCHA and four DCHA police officers on October 19, 2012, setting forth three counts alleging: (Count I) violations of the WPA, (Count II) violations of the District of Columbia Human Rights Act (DCHRA), and (Count III) wrongful termination. The defendants' motion for partial dismissal requested, *inter alia*, dismissal of the WPA count as

barred by the statute of limitations to the extent that it relied upon events occurring more than one year before the filing of his complaint. In its ruling of July 11, 2013, however, the trial court dismissed McCall's WPA claim in its entirety. The trial court reasoned that "any claim plaintiff may have had under the WPA started to accrue the first time defendants allegedly took prohibited personnel action," and because McCall had been aware of an allegedly prohibited personnel action since at the latest April 5, 2011, the day that he was placed on administrative leave, the whistleblower claim he filed in October of 2012 was time barred *in toto*.

Following discovery, McCall filed a motion to dismiss Counts II and III with prejudice, "in order to perfect for appeal" the trial court's ruling on the statute of limitations with respect to Count I. The trial court granted the motion, and this appeal followed.

### III. Analysis

#### A. Standard of Review

"We review *de novo* the trial court's dismissal of a complaint pursuant to Super. Ct. Civ. R. 12(b)(6)," and "apply the same standard as the trial court,

meaning we accept the allegations of the complaint as true." *Comer v. Wells Fargo Bank, N.A.*, 108 A.3d 364, 371 (D.C. 2015) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must set forth sufficient facts to establish the elements of a legally cognizable claim," *Woods v. District of Columbia*, 63 A.3d 551, 552-53 (D.C. 2013), containing "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## B.    Discussion

On appeal, McCall makes two arguments. His first argument is that the alleged campaign of harassment against him created a hostile work environment that should be considered a single continuing violation, allowing him to file suit within one year[3] of any act that is part of the hostile work environment. *See*

---

[3] Although the issue of whether a plaintiff was "aware" of retaliatory action for purposes of determining whether the one-year or three-year time bar applies is a distinct question, McCall's complaint indicates that he quickly became aware that his supervisors and co-workers were retaliating against him for attempted whistleblowing. Neither party disputes that the applicable provisions require McCall to file "within one year," and we are satisfied that the one-year bar applies in these circumstances. *See Clayton v. District of Columbia*, 931 F. Supp. 2d 192,

(continued . . .)

*National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115, 118 (2002) ("Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct."). This argument requires us to consider whether the continuing violation doctrine, which we have applied in the employment discrimination context, applies to the provisions of the WPA.

McCall's second argument is that even if his continuing violation argument ultimately fails—either as a matter of fact or a matter of law—his termination was a discrete violation of the WPA that independently triggers the statute of limitations, regardless of whether his prior suspension likewise violated the statute.[4] Thus, we must also consider whether an employee is time-barred from initiating a whistleblower protection action against an agency or its employees who took a prohibited personnel action against him within the preceding year—in this

---

(. . . continued)
203 (D.D.C. 2013) ("an employee may argue that she did not learn that the action was retaliatory until some later date, and thus, the one-year statutory period began later") (citing cases).

[4] See *supra* note 3. We note also that while McCall's termination was effective October 21, 2011, he did not learn of his termination until "approximately the third week of November, 2011." However, since McCall filed his complaint on October 19, 2012, the correct date from which the statute of limitations began to run—at least for purposes of McCall's termination-based claim—is immaterial.

case, termination—because more than one year had elapsed since the defendants' first alleged violation of the statute.

For the reasons given below, we agree with both of McCall's arguments, and hold that both the hostile work environment and the termination that McCall allegedly suffered constitute separate, actionable violations of the WPA—the former occurring on a continuing basis that extended into the limitations period, and the latter occurring clearly within that one-year period. Accordingly, we reverse the order dismissing McCall's complaint, and remand for further proceedings.

## 1. A Hostile Work Environment

Drawing upon case law from the employment discrimination context, McCall asks this court to "allow claims [under the WPA] based on acts which occur over time[,] creating a hostile environment." "A hostile work environment claim is comprised of a series of separate acts that collectively constitute 'one unlawful employment practice,'" and thus "if an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by the court for the purposes of

determining liability." *Lively v. Flexible Packaging Ass'n*, 830 A.2d 874, 890 (D.C. 2003) (citing *Morgan*, *supra*, 536 U.S. at 116-17) (quotation marks omitted, brackets in original). Ultimately, we conclude that the creation of a hostile work environment in retaliation for a protected disclosure constitutes a violation of the WPA. We also conclude that the complaint, fairly read, would permit a finder of fact to determine that an act contributing to that work environment occurred within the limitations period, thus bringing the entire continuing violation within the statute of limitations, and thus reverse and remand on this basis.

As McCall contends, the retaliatory creation of a hostile work environment is a violation of the WPA. The Act forbids supervisors from taking "prohibited personnel action or otherwise retaliat[ing] against an employee because of the employee's protected disclosure."[5] A "'[p]rohibited personnel action' includes but is not limited to: recommended, threatened, or actual termination, demotion, suspension, or reprimand; involuntary transfer, reassignment, or detail; . . . or *retaliating in any other manner* against an employee because that employee makes a protected disclosure . . . ." D.C. Code § 1-615.52 (a)(5)(A) (emphasis added). Thus, although the statute lists examples of discrete retaliatory acts, there are

_____

[5] D.C. Code § 1-615.53 (a).

catch-all provisions in both the general prohibition on retaliation ("or otherwise retaliate") and in the specific definition of a prohibited personnel action ("includes but is not limited to . . . retaliating in any other manner") that demonstrate a legislative intent to forbid all retaliation against whistleblowers, regardless of the method of punishment adopted by a whistleblower's superiors.

The very definition of a hostile work environment demonstrates that retaliation in this form is not an insignificant matter. *Lively*, *supra*, 830 A.2d at 888 ("a plaintiff . . . has a viable hostile environment claim if [he] can demonstrate (1) that [he] is a member of a protected class [here, whistleblowing employees as defined by the WPA], (2) that [he] has been subjected to unwelcome harassment, (3) that the harassment was based on membership in the protected class, and (4) that the harassment is severe and pervasive enough to affect a term, condition or privilege of employment."). Furthermore, as the foregoing quotation demonstrates, we have already applied the hostile work environment doctrine in the employment discrimination context.[6] Similarly, other courts have held that a retaliatory hostile

---

[6] *Lively*, *supra*, 830 A.2d at 890; *see also Crawford v. District of Columbia*, 891 A.2d 216, 221 (D.C. 2006) (referring to federal employment discrimination legislation as "comparable" to the WPA).

work environment may violate both state whistleblower protection statutes,[7] and the whistleblower protection provisions included within several federal statutes.[8] Accordingly, we now hold that a hostile work environment—if created in response to an employee's protected disclosure—constitutes retaliation in a form contemplated and prohibited by D.C. Code § 1-615.53.

Having determined that a retaliatory hostile work environment is a violation of the WPA, we now turn to address the application of the statute of limitations to McCall's claim. D.C. Code § 1-615.54 (a)(2) requires plaintiffs to file "within 3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first." As we know from case law interpreting similar language in the employment discrimination context, a hostile work environment, by its nature, is a continuing violation that "cannot be said to occur on any particular day. It occurs over a series of days or perhaps years." *Lively*, *supra*, 830 A.2d at 891-92 ("A hostile work environment claim is

---

[7] *Bodman v. Maine, Dep't of Health & Human Servs.*, 720 F. Supp. 2d 115, 126 (D. Me. 2010) (Maine); *Cokus v. Bristol Myers Squibb Co.*, 827 A.2d 1173, 1185 (N.J. Super. Ct. Law Div. 2002) (New Jersey).

[8] *Sassé v. United States Dep't of Labor*, 409 F.3d 773, 782 (6th Cir. 2005) (whistleblower protections in the Clean Air Act, Solid Waste Disposal Act, and Federal Water Pollution Control Act); *Williams v. Administration Review Bd.*, 376 F.3d 471, 477 (5th Cir. 2004) (whistleblower protections in the Energy Reorganization Act).

comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'") (quoting *Morgan*, *supra*, 536 U.S. at 115, 124).[9] Accordingly, "[a]ll of the component acts comprising the hostile work environment claim need not have taken place within the one-year period . . . but at least one 'act contributing to the claim' must occur within that period in order for the filing to be timely." *Id.* (quoting *Morgan, supra*, 536 U.S. at 117). Thus, McCall would have one year from the last act contributing to the hostile work environment to file his claim for relief.

Based on our review of McCall's complaint, we conclude that McCall has alleged sufficient facts to permit a finding that a retaliatory hostile work environment extended into the limitations period.[10] The alleged "campaign of

---

[9] This is in direct contrast to "[a] discrete retaliatory or discriminatory act [which] 'occurred' on the day that it 'happened.'" *Morgan*, *supra*, 536 U.S. at 110.

[10] As neither the trial court nor the parties before us have questioned whether McCall made the requisite "[p]rotected disclosure," we have no occasion to address that question here. *See* D.C. Code § 1-615.52 (a)(6) (A "[p]rotected disclosure" is "any disclosure of information . . . that the employee reasonably believes evidences . . . [g]ross mismanagement . . . [a]buse of authority . . . violation of a . . . law, rule, or regulation . . . or . . . [a] substantial and specific danger to the public health and safety."). As we indicated, however, McCall prepared a standard statement setting forth in detail what happened on January 5, 2011, and he repeated his statement and complaints about what occurred on that date to Lieutenant Villines and to Nicole Mason, an attorney with DCHA.

harassment" against McCall included an attempt to have an officer incriminate him in the original mishandling of contraband, excessive scrutiny, unfounded accusations that he was frequently late to work, isolation from the assistance of other officers, and a death threat specifically linked to his whistleblowing activity. Most significantly for statute of limitations purposes, McCall alleges that when the harassment created physical and mental health problems that rendered him unfit to work, Lieutenant Villines insisted that he return to work (despite a physician-certified need to refrain), and refused to fill out employer-side worker's compensation forms—a refusal which, it can be inferred, persisted through McCall's termination on October 21, 2011.[11] Because McCall filed suit on October 19, 2012, Villines's insistence that he work and refusal to assist him in

---

[11] McCall cannot recover for discrete acts of retaliation (such as his suspension and termination) under the rubric of a hostile environment claim. *Morgan*, *supra*, 536 U.S. at 110 (because "a discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened,'" the statute of limitations runs from "the date of the act."); *see also id.* at 114-15 (distinguishing between "[d]iscrete acts such as termination," and "[h]ostile environment claims"); *Sassé*, *supra* note 8, 409 F.3d at 783 ("[plaintiff's] May 2000 suspension was a discrete act that cannot properly be characterized as part of a continuing hostile work environment"). However, these discrete violations of the statute are available as "background evidence" for his hostile environment claim. *Morgan*, *supra*, 536 U.S. at 113 ("an employee [may use] the prior acts as background evidence in support of a timely claim"); *Porter v. Cal. Dep't of Corr.*, 419 F.3d 885, 893 n.4 (9th Cir. 2005) ("discrete acts still may be considered for purposes of placing non-discrete acts in the proper context"); *Huynh v. Damota*, 61 F. App'x 976, 978 n.4 (7th Cir. 2003).

obtaining allegedly deserved worker's compensation plausibly constitutes a retaliatory act "comprising the hostile work environment claim" within the statutory period. *See Lively*, *supra*, 830 A.2d 874, 891. Although the fact-finder might eventually determine that McCall has "failed to identify an act of discrimination with which to anchor his hostile work environment claim" within the limitations period, *Sassé*, *supra*, 409 F.3d at 783, at this stage his complaint contains "sufficient facts to establish the elements of a legally cognizable claim." *Woods*, *supra*, 63 A.3d at 552-53. Accordingly, we reverse and remand for further proceedings on McCall's claim that he was subjected to a hostile work environment in violation of the WPA.

## 2. Termination As A Discrete Act

McCall's suit was dismissed in its entirety because the trial court reasoned that "any claim plaintiff may have had under the WPA started to accrue the first time defendants allegedly took prohibited personnel action," and McCall had failed to file his complaint within a year of April 5, 2011, the day he was placed on administrative leave. Regardless of whether McCall's hostile work environment claim succeeds, his termination must be considered as a discrete violation of the WPA, not as part of his hostile work environment claim. *Morgan*, *supra*, 536 U.S.

at 110-15 (distinguishing between "[d]iscrete acts such as termination," and "[h]ostile environment claims"); *Sassé*, *supra* note 8, 409 F.3d at 783 ("[plaintiff's] May 2000 suspension was a discrete act that cannot properly be characterized as part of a continuing hostile work environment"). Accordingly, we proceed to consider McCall's second claim: that his termination—as a discrete violation of the statute—independently triggers the statute of limitations.[12] Three considerations lead us to agree with McCall's interpretation: (1) the wording of the statute, which clearly ties both civil actions and the limitations period to "a violation" of the statute, D.C. Code § 1-615.54 (a), thus allowing for the possibility of multiple violations being claimed in a single suit; (2) the remedial purpose of the WPA, clearly articulated in D.C. Code § 1-615.51, and (3) the nature of this case, which exemplifies how several violations of the WPA might occur in an escalating string of retaliatory personnel actions.

### (a) Statutory Text

Any "employee aggrieved by a violation" of the WPA's prohibitions set forth in D.C. Code § 1-615.53 may bring a civil action against those responsible,

---

[12] Of course, our holding that each violation of the WPA triggers the statute of limitations anew applies with equal force to hostile work environment claims.

and must file that action "within 3 years after a violation occurs or within one year after the employee first becomes aware of the violation, whichever occurs first." D.C. Code § 1-615.54 (a)(1)-(2). The emphasis of this language is on the date that "a violation" occurs. D.C. Code § 1-615.54 (a). The Council's use of the phrase "a violation" is significant: because the statute can be violated by numerous types of "prohibited personnel action,"[13] the statute contemplates that multiple violations can occur, and allows a civil action based on a single violation. We conclude that failure to file suit within a year of one violation does not preclude filing suit based on subsequent violations.[14]

This conclusion finds support in federal case law interpreting the same provision of the D.C. Code. In *Clayton*, *supra* note 3, 931 F. Supp. 2d at 204, the U.S. District Court for the District of Columbia held that Ms. Clayton's WPA claim was not untimely, even though her claim was based on a reclassification decision of which she had received notice by letter thirteen months earlier. The

---

[13] D.C. Code § 1-615.52 (a)(5)(A) ("'Prohibited personnel action' includes but is not limited to: recommended, threatened, or actual termination, demotion, suspension, or reprimand; involuntary transfer, reassignment, or detail; referral for psychiatric or psychological counseling; failure to promote or hire . . . .").

[14] *See Morgan, supra*, 536 U.S. at 114 (2002) ("Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable unlawful employment practice.") (internal quotation marks omitted).

reclassification placed Ms. Clayton in a category of employees terminable at will, and made her vulnerable to the termination that followed shortly thereafter. *Id.* at 199. Because Ms. Clayton asserted that she did not learn that the reclassification was retaliatory until her termination became effective, and she filed her complaint less than one year after learning that fact, the court held that her claim based on the reclassification that occurred in September of 2010, thirteen months prior to the filing of the complaint, "was not filed untimely." *Id.* at 204. This was true even though Ms. Clayton had received whistleblowing-related "termination threats in June or July 2009, January 2010, and September 2010," and "threatened . . . termination" based on an employee's "protected disclosure" constitutes an actionable violation of the WPA. *See id.* at 198; D.C. Code § 1-615.52 (a)(5)(A).

Thus, *Clayton* supports the straightforward reading of the statute that McCall desires. Because the limitations period begins to run from the date that "a violation" occurs or from the date that an employee becomes "aware" of it, each subsequent violation triggers the statute anew with respect to the subsequent violation.[15] D.C. Code § 1-615.54 (a). Accordingly, failure to file an action within

---

[15] Although McCall also argues that the "campaign of harassment" he suffered should be considered a single prohibited personnel action, his alternative argument is that "[e]ven if the Superior Court was correct in determining that all

(continued . . .)

the limitations period for one violation does not make District agencies and their employees immune from suit with respect to all subsequent violations. Such a reading would conflict with the text and purpose of the statute.

## (b) Statutory Purpose

Allowing a civil suit based on any particular violation of the WPA, along with a distinct corresponding limitations period for each violation, is not merely consistent with the text of the statute, it is also in accord with its declared policy: effective protection for whistleblowers. D.C. Code § 1-615.51. The Act's initial "declaration of purpose" states that "the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, violations of law, or threats to public health or safety without fear of retaliation or reprisal." *Id.* It goes on to list the goals of the Act in great detail, declaring it to be the Council's "policy to . . . [e]nhance the rights of District employees to challenge

---

(. . . continued)
actions prior to October 19, 2011[] would be untimely, there is no basis for dismissing as untimely [claims based upon] acts which did not occur until after that date. . . . [T]he statute clearly enumerates termination as a separate discrete personnel action, which is prohibited if taken in retaliation for protected activity." For the reasons given in the text, both the governing language and stated purpose of the WPA lead us to the conclusion that McCall's alternative argument is correct.

the actions or failures of their agencies and to express their views without fear of retaliation . . . [and] [e]nsure that rights of employees to expose corruption, dishonesty, incompetence, or administrative failure are protected." *Id.*

The history of the statute evinces a consistent legislative intent to expand and secure protections for whistleblowers. The Council's declaration of purpose has remained substantially unchanged since the time that whistleblower protections were originally enacted as part of the Comprehensive Merit Personnel Act of 1978. *Compare* D.C. Code § 1-345.1 (1980 Supp.), *with* D.C. Code § 1-615.51 (2012 Repl.). However, these original protections made it unlawful only to retaliate "against subordinate employees appearing as witnesses before the Council," and employees could initiate a civil action only after "the Corporation Counsel decline[d] to prosecute" their case. D.C. Code § 1-345.3 (a), (f) (1980 Supp.).

To address these limitations, the Whistleblower Amendment Act of 1998 expanded the 1978 protections, declaring "that the public interest is served when employees of the District government are free to report waste, fraud, abuse of authority, [or] violations of law . . . without fear of retaliation or reprisal." D.C. Code § 1-616.11 (1999 Repl.). The 1998 amendments introduced the current definitions for "protected disclosure" and "prohibited personnel action," and

allowed "[a]n employee aggrieved by a violation" of the statute to "bring a civil action . . . seeking relief and damages." D.C. Code §§ 1-616.12-.14 (1999 Repl). Along with this cause of action, the Council introduced a one year statute of limitations, applicable from the date that "a violation occurs or . . . the employee first becomes aware of the violation." D.C. Code § 1-616.14 (a) (1999 Repl.).

In 2009, however, the Council found that "District employees continue to be subject to retaliation when they report government misconduct," and that "[w]orse, many District employees remain silent despite the existing protections, because those protections do not go far enough." D.C. Council, Report on Bill 18-233 at 2 (Nov. 9, 2009) [hereinafter 2009 Committee Report]. Certain rulings by federal judges had, in the Council's view, "diminished the law's efficacy" by holding that plaintiffs were required by statute to provide notice of injury within six months,[16] and that no implied right of action existed against supervisors.[17] *Id.* at 3. The Whistleblower Protections Amendment Act of 2009 addressed these "judicially created gaps," *id.* at 4, by "eliminat[ing] the requirement . . . that plaintiffs provide

---

[16] *Winder v. Erste*, 566 F.3d 209, 213-14 (D.C. Cir. 2009) (applying D.C. Code §§ 1-615.54 (a), 12-309 (2006)).

[17] *Tabb v. District of Columbia*, 477 F. Supp. 2d 185, 189 (D.D.C. 2007) (applying D.C. Code § 1-615.54).

notice of claims to the District of Columbia within six months of their injury," and expressly providing for a right of action against supervisors and other D.C. employees. *Bowyer v. District of Columbia*, 779 F. Supp. 2d 159, 162, 165 (D.D.C. 2011) (noting that the Council ended the six-month notice requirement "to ensure that WPA claims were not unnecessarily barred by technical requirements"); *see also* 2009 Committee Report at 7.

The 2009 Act also extended the limitations period from one year to three years for undiscovered violations, in order to "reduce the likelihood that a whistleblower's case would be dismissed on procedural grounds while avoiding the possibility of stale claims." 2009 Committee Report at 6-7. These changes indicate a legislative desire, consistent throughout the history of the statute, to protect whistleblowers from retaliation.

By contrast, requiring whistleblowers to be vigilant to file suit as soon as their employer takes the first in a series of what the employee has reason to believe to be retaliatory actions would have the opposite effect. Some whistleblowers would be forced to choose between filing quickly—with any number of potentially

adverse consequences[18]—or risk losing their cause of action entirely despite later being fired or otherwise retaliated against in a more unequivocal manner. This would not "[e]nsure that rights of employees to expose corruption, dishonesty, incompetence, or administrative failure are protected," or even come close to "[m]otivat[ing] employees to do their duties justly and efficiently." D.C. Code § 1-615.51. Instead, corrupt or incompetent city employees would be motivated to punish whistleblowers through subtle though discernable violations of the statute, thus triggering the one-year statute of limitations, while saving for later periods more major retribution, for which they would face no civil liability. The most significant cost would be the loss of information that might otherwise be reported. As the Council succinctly put it, "[r]etaliation deters future whistleblowing." 2009 Committee Report at 3.

Reading the statute of limitations as applying to each violation is not only the most natural reading of the statutory text, but it is also consistent with the statute's declared purposes: *effective* protection for whistleblowers. Consistent

---

[18] For example, some whistleblowers thus pressured might file WPA suits over petty or borderline violations of this anti-retaliation statute, thus straining already fragile workplace relationships, and risking the expenses of litigation over undeveloped workplace disputes.

with that purpose, it "ensure[s] that WPA claims [are] not unnecessarily barred by technical requirements." *Bowyer*, *supra*, 779 F. Supp. 2d at 165.

### (c) Application to the Facts

The April 5, 2011, events leading up to and including McCall's placement on administrative leave certainly constituted a violation of the WPA.[19] However, later actions by DCHA and other defendants can reasonably be viewed as further discrete violations of the WPA, and McCall's termination, of which he was not apprised until November 2011, certainly can be so viewed. D.C. Code § 1-615.52 (a)(5)(A) ("'Prohibited personnel action' includes . . . actual termination."). The fact that McCall was "aware" that his placement on administrative leave was retaliatory would start the statute of limitations clock with respect to only that violation. D.C. Code § 1-615.54 (a). To the extent that McCall's suit is based upon renewed violations of the WPA, and is brought within one year of the time he

---

[19] Seeking to silence McCall by placing him on administrative leave for a phony impersonating-an-officer investigation, as alleged, would satisfy the definition of a "prohibited personnel action," which includes "recommended, threatened, or actual . . . suspension, or reprimand . . . or retaliating in any other manner against an employee because that employee makes a protected disclosure." D.C. Code § 1-615.52 (a)(5) ("'Retaliating' includes conducting . . . an investigation of an employee . . . because of a protected disclosure.").

became aware of those subsequent violations, his suit is not barred by the statute of limitations. *Id.*

## Conclusion

Taking the allegations of the complaint as true, McCall has suffered two distinct violations of the WPA not barred by the statute of limitations: a hostile work environment extending into the limitations period, and the termination of his employment. Accordingly, the order dismissing Count I of the complaint is reversed. We remand the case for further proceedings consistent with this opinion.

*So ordered.*